IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2004 Session

## NASHVILLE FORD TRACTOR, INC. v. GREAT AMERICAN INSURANCE COMPANY

**Appeal from the Circuit Court for Sumner County**
**No. 17235-C     C.L. Rogers, Judge**

---

**No. M2003-00575-COA-R3-CV - Filed December 29, 2005**

---

This appeal involves a dispute over the payment for leased construction equipment used on two sewer projects for the City of Gallatin. The general contractor was required to take over and complete the work after a subcontractor and sub-subcontractor defaulted. Thereafter, the company that had leased three pieces of construction equipment to the subcontractor and sub-subcontractor submitted claims for payment to the general contractor and the contractor's bonding company. The general contractor declined to pay for the equipment and filed suit for breach of contract against the subcontractor in the Circuit Court for Sumner County. The contractor also sought a declaratory judgment regarding its rights, as well as those of its bonding company, the subcontractor, and the City, under the construction contract, the subcontracts, and the payment bond. Following a two-day bench trial, the trial court awarded the equipment leasing company a $38,399 judgment against the bonding company and the sub-subcontractor and a $29,232 judgment against the subcontractor. The court also denied the equipment leasing company's request for pre-judgment interest because it had intentionally falsified documents during the collection process. The bonding company appealed. We have determined that the trial court erred by failing to dismiss all of the equipment leasing company's claims against the payment bond after expressly finding that the leasing company had committed fraud during the claims process. Accordingly, we reverse the judgment against the contractor's surety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Arthur E. McClellan and Jade A. Rogers, Gallatin, Tennessee, for the appellant, Great American Insurance Co.

John R. Reynolds, Nashville, Tennessee, for the appellee, Nashville Ford Tractor, Inc.

**OPINION**

**I.**

Ralph M. Webster has been in the construction industry in Gallatin and Sumner County since 1954.[1] Beginning in 1994, Mr. Webster subcontracted the underground utility work on his construction projects to Murrell Construction.[2] On May 8, 1996, the City of Gallatin awarded Mr. Webster a $532,853 contract to install approximately 14,000 linear feet of sewer lines and appurtenant structures in the area of Lock Four Road. Mr. Webster's bid for the project was based on cost estimates provided by Murrell Construction, and Mr. Webster entered into a $433,490 subcontract with Murrell Construction to perform all the work required by the prime contract. The difference between the amount of the prime contract and the subcontract represented the value added by Mr. Webster in providing oversight, administrative support, and the performance and payment bonds required by statute and the prime contract.[3] The deadline for completion of the Lock Four Road project was November 8, 1996.

Work began in earnest at the Lock Four Road site on June 1, 1996. On that day, Mr. Webster, at Murrell Construction's request, transported to the construction site a Fiat-Allis Hitachi FX210 excavator (Hitachi excavator) that Murrell Construction had been leasing from Nashville Ford Tractor, Inc. (Nashville Ford Tractor) for approximately one year.[4] Murrell Construction used the Hitachi excavator to dig the trenches for the installation of sewer lines and other underground

---

[1] Mr. Webster does business under the name "Webster Excavating Co."

[2] Randy Murrell and his father, Jimmy Murrell, incorporated "Murrell Construction, Inc." as a for-profit Chapter S Corporation on July 19, 1994. *Cf.* Tenn. Code Ann. § 48-14-101(a)(1) (2002) ("A corporate name . . . [m]ust contain the word 'corporation,' 'incorporated,' 'company,' or the abbreviation 'corp.,' 'inc.,' 'co.,' or words or abbreviations of like import in another language . . . ."). Randy Murrell was president of the corporation, and Jimmy Murrell was vice president. Jimmy Murrell prepared the bids and estimates on the projects while Randy Murrell oversaw and participated in the actual construction. There were never any board of directors meetings, shareholder meetings, or company meetings, and on April 20, 1998, the Tennessee Secretary of State administratively dissolved Murrell Construction, Inc. for failure to file the required corporation annual report. During the time it was in existence, Murrell Construction, Inc. was referred to by the Murrells and their customers alike as "Murrell Construction, Inc.," "Murrell Construction Co.," and "Murrell Construction Co., Inc."

[3] Tenn. Code Ann. § 12-4-201(a) (Supp. 2005) provides as follows:
No contract shall be let for any public work in this state, by any city, . . . until the contractor shall have first executed a good and solvent bond to the effect that the contractor will pay for all the labor and materials used by the contractor, or any immediate or remote subcontractor under the contractor, in such contract . . . .

[4] Randy Murrell and Nashville Ford Tractor's representative executed the first lease agreement for the Hitachi excavator on June 27, 1995. The term of the lease agreement was four weeks, and the agreement expressly provided that any amendment to the lease must be in writing and signed by both parties. Thus, under the plain language of the lease agreement, Murrell Construction and Nashville Ford Tractor were required to sign a new lease agreement each month to continue the rental of the Hitachi excavator. However, Murrell Construction and Nashville Ford Tractor did not follow this practice. Instead, at the end of each month, Nashville Ford Tractor's representative would simply prepare and sign a new lease agreement for the following month and send a carbon copy to Murrell Construction. Thus, only the first lease agreement contains the signatures of both parties. The same procedure was followed with all of the lease agreements at issue in this case.

structures on its subcontracts with Mr. Webster. According to Randy Murrell, the Hitachi excavator was at the Lock Four Road site throughout June and July 1996.

On July 8, 1996, the City of Gallatin awarded Mr. Webster a second contract to install approximately 4,000 linear feet of sewer lines and appurtenant structures at the Gallatin Industrial Center. Mr. Webster subcontracted all of the work under the prime contract to Murrell Construction. The City agreed to pay Mr. Webster $256,999 for the work, and Mr. Webster agreed to pay Murrell Construction $218,622. Thus, Mr. Webster's profit on the Gallatin Industrial Center project would have been $38,377 minus expenses. The deadline for completion of the Gallatin Industrial Center project was January 3, 1997.

Murrell Construction subcontracted with Randy Murrell's brother, Ted Murrell, to assist on the Lock Four Road project.[5] On July 9, 1996, Ted Murrell leased a Samsung SE210 excavator (Samsung excavator) from Nashville Ford Tractor, and on August 20, 1996, he leased a Fiat-Allis FR140 rubber wheel loader (Fiat-Allis wheel loader) for earth moving. With two excavators on the Lock Four Road site, Randy Murrell could continue work in one direction with his crew while Ted Murrell set off in the opposite direction with a second crew. However, in mid-August 1996, Murrell Construction had Mr. Webster transport the Hitachi excavator to the Gallatin Industrial Center site so that work could begin on the second project. According to Randy Murrell, the Hitachi excavator remained at the Gallatin Industrial Center for four to five weeks before being moved back to the Lock Four Road site.[6]

By October 1996, the Lock Four Road project was in serious trouble. The November 8, 1996 deadline was fast approaching, and Murrell Construction was not on target to meet it. In addition, the cost of labor, materials, and equipment for the two large City projects had pushed Murrell Construction's financial resources to the breaking point. Although Murrell Construction received checks totaling more than $265,000 from Mr. Webster in July, August, and September 1996 as progress payments on the two projects, Murrell Construction and Ted Murrell were unable to make the August 1996 lease payments to Nashville Ford Tractor on the Hitachi excavator and the Fiat-Allis wheel loader. In September and October 1996, they were unable to make the lease payments on all three pieces of heavy equipment they were leasing from Nashville Ford Tractor.[7]

---

[5] Ted Murrell did business under the names "Samson Construction" and "Ted Murrell Construction Co."

[6] It is undisputed that Murrell Construction moved the Hitachi excavator back and forth between the two City projects and used it on at least one other project during this time. As the trial court recognized, what is unclear from the record is the amount of time the Hitachi excavator was actually used on the various projects. In his deposition, which was admitted at trial, Randy Murrell testified that Mr. Webster provided all of the transportation for the twenty-ton Hitachi excavator during the course of the two City projects; however, Ted Murrell contradicted his brother's testimony. In addition, Mr. Webster testified that all equipment moves he performed for Murrell Construction would be accurately reflected in his billing statements to Murrell Construction, but the move dates reflected in these statements do not correspond with Randy Murrell's testimony.

[7] The lease rates, including taxes, were $4,276 each for the Hitachi excavator and the Fiat-Allis wheel loader and $5,071 for the Samsung excavator.

-3-

In late October or early November 1996, James Steven Denny, one of the owners of Nashville Ford Tractor, spoke with Mr. Webster about the delinquency on the Murrell Construction and Ted Murrell accounts.[8] Mr. Webster informed him that Murrell Construction was about to receive a large draw on the two projects and advised him that Nashville Ford Tractor should attempt to get its money from the Murrells then.[9] However, when Murrell Construction received the December 13, 1996 progress payment of $49,158.50 from Mr. Webster, the Murrells did not use these funds to pay the outstanding balances on their accounts with Nashville Ford Tractor. They explained to Nashville Ford Tractor that the December progress payment was not as large as they had been expecting.

In December 1996, Nashville Ford Tractor retrieved the Fiat-Allis wheel loader from the Lock Four Road site but allowed the Murrells to continue using the Hitachi and Samsung excavators for the next few months because the two City projects could not be completed without them. Throughout this time, the Murrells repeatedly assured Mr. Denny that both projects were nearing completion, that the final payments on the subcontracts from Mr. Webster would be sufficient to cover the outstanding balance on the equipment leases, and that they would bring their accounts with Nashville Ford Tractor current when they received the final subcontract payments.

Unfortunately, Murrell Construction did not complete the two City projects and thus never received the expected final payments. Substantially all of the pipe and appurtenant structures had been installed at the Gallatin Industrial Center site by the end of November 1996, and the same was true of the Lock Four Road project by the end of January 1997. However, the rain that had fallen during the construction had caused a great deal of soil erosion, and by March 1997, Murrell Construction had not yet fully restored the surface areas to their pre-construction condition as required by the contracts. As a result, Murrell Construction could not obtain releases from all of the adjoining landowners, and the City would not accept the projects as complete without the releases. Unable to pay their laborers or make further lease payments, Murrell Construction and Ted Murrell abandoned the job sites in early or mid-March 1997 and arranged with Nashville Ford Tractor to reclaim the two excavators.[10]

Shortly after Murrell Construction abandoned the two job sites in March 1997, Nashville Ford Tractor began attempting to collect on the Murrells' delinquent lease accounts from the City, Mr. Webster, and Great American Insurance Company (Great American), the company that issued the performance and payment bonds for both projects.[11] On March 22, 1997, Nashville Ford

---

[8]Mr. Denny owns 20% of Nashville Ford Tractor. He was in charge of Nashville Ford Tractor's accounts with Murrell Construction and Ted Murrell.

[9]Murrell Construction's vice president, Jimmy Murrell, told Mr. Webster later that the issues with Nashville Ford Tractor had been resolved.

[10]The Hitachi excavator was recovered at the Gallatin Industrial Center site, and the Samsung excavator was recovered at the Lock Four Road site.

[11]The payment bonds for the two projects were substantially identical. Under each bond, Mr. Webster and Great American obligated themselves to the City in an amount equal to the contract price of the prime contract. Each
(continued...)

-4-

Tractor's collections manager wrote to the City requesting assistance in collecting $72,607.50 in unpaid lease payments for the three pieces of equipment it claimed Murrell Construction had used on the Lock Four Road project under subcontract with Mr. Webster.[12]  Nashville Ford Tractor threatened to file a lien against the Lock Four Road project if the leases remained unpaid.

Attached to Nashville Ford Tractor's letter to the City were documents purporting to be copies of the original lease agreements for the Hitachi excavator for the months of August 1996 through March 1997 and for the Samsung excavator for the months of September 1996 through January 1997.  Copies of the lease agreements for the Fiat-Allis wheel loader were not attached to the letter, and the leases attached to the letter did not add up to $72,607.50.  Of even greater concern, the copies of the lease agreements attached to the letter showed that Nashville Ford Tractor had altered the original agreements after they had been signed by or sent to Murrell Construction and Ted Murrell.  On the originals, the space indicating where the equipment was to be used had been left blank.  The copies attached to the March 22, 1997 letter all had some variant of "Lock Four Road" written in in this space.

On April 10, 1997, Nashville Ford Tractor's attorney wrote another letter to the City requesting payment of the unpaid lease agreements.  In this letter, Nashville Ford Tractor sought payment of only $68,331.50.  The letter erroneously claimed that the Hitachi excavator, the Samsung excavator, and the Fiat-Allis wheel loader had all been leased from Nashville Ford Tractor by Murrell Construction.  In addition, after listing the lease numbers and amounts due on each piece of equipment, the letter made the following representation:  "Nashville Ford Tractor states that Murrell Construction used this equipment under contract as a subcontractor for Ralph Webster Excavating . . . in the performance of the Sewer System Additions Contract S-1 for the City of Gallatin [i.e., the Lock Four Road prime contract]."

Unlike the March 22, 1997 letter, the April 10, 1997 letter had copies of lease agreements for all three pieces of equipment attached.  All but one had been altered after the fact by the insertion of "Lock Four Road" or similar language in the space indicating where the equipment was to be used.[13]  Moreover, the April 10, 1997 letter expressly referred to the payment bond for the Lock Four Road project but not to the payment bond for the Gallatin Industrial Center project.  In fact, the letter contained no reference at all to the Gallatin Industrial Center project or any other project even though Nashville Ford Tractor knew at the time that the equipment for which it was seeking payment had not been used exclusively on the Lock Four Road project during the period covered by the attached

---

[11](...continued)
bond expressly provided that this obligation would be void if Mr. Webster promptly paid for all labor and materials, including equipment, consumed or used in connection with the bonded projects.

[12]The letter acknowledged that one piece of equipment had been picked up from the Gallatin Industrial Center site and had also been used on a sewer construction project there.

[13]Inexplicably, Nashville Ford Tractor attached an unaltered version of one of the lease agreements for the Hitachi excavator to the April 10, 1997 letter even though it had already attached an altered version of the same agreement to its March 22, 1997 letter to the City.

leases.[14]  Nashville Ford Tractor's attorney also sent a copy of the April 10, 1997 letter to Great American.

On May 19, 1997, Nashville Ford Tractor's attorney sent a letter similar to the April 10, 1997 letter to the City, Great American, Mr. Webster, and the Murrells.  The letter reiterated the $68,331.50 amount due for the unpaid leases on all three pieces of equipment, as well as Nashville Ford Tractor's representation that all the equipment had been used by Murrell Construction to perform work under the prime contract for the Lock Four Road project.  It had the same altered versions of the lease agreements attached and referred to the payment bond for the Lock Four Road project but did not acknowledge in any way that the equipment had been used on other projects during the time period covered by the attached leases.  The May 19, 1997 letter also contained an addendum stating that the letter constituted notice under Tenn. Code Ann. § 12-4-205 (Supp. 2005) and that if the attached leases were not paid within thirty days, Nashville Ford Tractor would file suit under the statutory payment bond for the Lock Four Road project to collect the outstanding balance.[15]

On May 28, 1997, James Scotty Chambliss, secretary-treasurer of Nashville Ford Tractor, executed a sworn payment bond affidavit of claim reciting the bond number of the Lock Four Road payment bond and naming Mr. Webster as the principal on the bond.  Mr. Chambliss swore that Murrell Construction was justly and truly indebted to Nashville Ford Tractor for $68,331.50 on the basis of the same altered lease agreements that had been attached to the April 10, 1997 and May 19, 1997 letters.  Mr. Chambliss asserted that March 3, 1997 was the last date on which Nashville Ford Tractor furnished labor and materials to the Lock Four Road project and that notice of nonpayment had been mailed to Mr. Webster on March 25, 1997.  Mr. Chambliss expressly stated that Nashville Ford Tractor was making this affidavit "in proof of and in support of said claim, and as an inducement to Great American Insurance Companies, as Surety upon said contract and project, to make payment of said indebtedness under its bond."

Mr. Webster did not pay Nashville Ford Tractor the balance due on the equipment leases within thirty days as demanded in the May 19, 1997 letter.  Instead, on June 25, 1997, Mr. Webster's attorney wrote a letter to Randy Murrell formally terminating the subcontracts for the Lock Four Road and Gallatin Industrial Center projects.  The letter advised Mr. Murrell that Mr. Webster would be taking over the completion of both projects and would look to Murrell Construction for indemnification for any damages resulting from Murrell Construction's failure to perform under the subcontracts.

By August 1997, Nashville Ford Tractor had still not filed suit to collect on the unpaid leases.  On August 5, 1997, Mr. Webster filed a complaint in the Sumner County Circuit Court for breach of contract and indemnification against Murrell Construction.  He also sought a declaratory judgment

_____

[14]Nashville Ford Tractor knew the equipment had not been on the Lock Four Road project the entire time because, among other things, it performed routine maintenance on the equipment while it was in the field.

[15]Tenn. Code Ann. § 12-4-205 provides that in order to recover under a statutory payment bond, a furnisher of labor or material must, within ninety days after the completion of the project, "give written notice . . . either to the contractor who executed the bond, or to the public official who had charge of the letting or awarding of the contract." The written notice must "set forth the nature, an itemized account of the material furnished or labor done, and the balance due therefor; and a description of the property improved."  Tenn. Code Ann. § 12-4-205.

regarding the respective rights and obligations of Great American, the City, Murrell Construction, and himself under the subcontracts and payment bonds for both projects. Mr. Webster alleged that Murrell Construction had breached the Lock Four Road and Gallatin Industrial Center subcontracts by failing to complete the projects, that it had cost him $100,000 more than what was due to Murrell Construction under the subcontracts to complete the two projects, and that he was entitled to indemnification for these expenses and a $100,000 judgment against Murrell Construction.

Mr. Webster also alleged that Nashville Ford Tractor had altered the originals of the unpaid lease agreements by adding "Lock Four Road" or similar words after they were signed or sent to Murrell Construction or Ted Murrell. He claimed that Nashville Ford Tractor's attempt in its May 19, 1997 letter to collect $68,331.50 under the payment bond for the Lock Four Road project on the basis of altered lease agreements was fraudulent. Thus, Mr. Webster also sought a declaratory judgment that he was not liable to Nashville Ford Tractor for payment of any unpaid leases.

Murrell Construction filed for bankruptcy protection on August 22, 1997. Randy Murrell and his wife later filed for bankruptcy protection in their individual capacities. On September 2, 1997, the City finally accepted the two projects as complete and authorized a $71,017.17 final payment to Mr. Webster. The final payment included a $20,282.93 change order on the Lock Four Road project requested by the City. The trial court entered an order dismissing the City from the lawsuit on October 28, 1997.

Nashville Ford Tractor filed its answer to Mr. Webster's complaint on November 18, 1997. In this answer, it denied any knowledge "of the so-called second contract by and between [Mr. Webster] and [Murrell Construction] to perform certain work on a second project at the Gallatin Industrial Park," and it denied altering the lease agreements to facilitate its collection of the balance on the lease agreements from Mr. Webster. Nashville Ford Tractor affirmatively stated that "to its knowledge . . . [,] all charges upon which [Nashville Ford Tractor] bases its claims herein represent the use of its equipment during the course, conduct[,] and performance of the subcontract with [Mr. Webster] on Lock Four Road." Mr. Denny, in his capacity as director and vice president, swore on behalf of Nashville Ford Tractor that the statements contained in the answer were true.

Nashville Ford Tractor filed a counterclaim against Mr. Webster and a cross-claim against Murrell Construction and Great American. The claims against Mr. Webster and Great American were based on the statutory payment bond for the Lock Four Road project, and the claim against Murrell Construction was based on its breach of the lease agreements by failing to pay the amounts due. Nashville Ford Tractor requested that the trial court enter a judgment in its favor against Mr. Webster, Great American, and Murrell Construction for $70,791.55 plus interest, late penalties, and prejudgment interest. With the trial court's permission, Nashville Ford Tractor later filed a third-party complaint against Ted Murrell.

For a variety of reasons, it took more than five years from the filing of the original complaint to bring the case to trial. In the interim, Nashville Ford Tractor repeatedly relied on the altered lease agreements in various court filings in its attempt to recover the unpaid balance on the lease agreements against Mr. Webster and Great American. Nashville Ford Tractor eventually admitted that the original lease agreements appeared to have been altered after the fact by the insertion of "Lock Four Road" in the space indicating where the equipment was to be used. It even requested

permission to amend its pleadings to remove its implausible prior denials of any knowledge that Murrell Construction was working on the Gallatin Industrial Center project for Mr. Webster.[16]

In December 2000, the trial court granted Mr. Webster a $100,000 default judgment against Murrell Construction for breach of contract. The trial court also allowed Mr. Webster to amend his complaint to add Jimmy Murrell as a defendant on the theory that Murrell Construction was a sham corporation and that Jimmy Murrell should therefore be held individually liable to Mr. Webster for the costs he incurred in completing the two projects. The trial court denied Jimmy Murrell's motion for summary judgment a few months before the case went to trial in September 2002.

By the time the case finally proceeded to trial, the various parties had arranged themselves into two distinct camps. Mr. Webster and Great American were on the one side, and Nashville Ford Tractor and the Murrells were on the other. Mr. Webster's attorney stated several times in open court that Mr. Webster had agreed to indemnify Great American from any liability for the claims of Nashville Ford Tractor, and Ted Murrell testified that he had struck a deal to assist Nashville Ford Tractor in pursuing its claim for the unpaid lease amounts against Mr. Webster and Great American on the condition that Nashville Ford Tractor would forego attempting to collect the outstanding sums from him.

The bench trial lasted two days. Messrs. Denny and Chambliss testified for Nashville Ford Tractor. Jimmy Murrell and Ted Murrell testified, but Randy Murrell was unable to do so because he had moved to Alaska. The trial court admitted his deposition into the record in lieu of live testimony. Mr. Webster's wife and bookkeeper, Sandra Kay Webster, testified for Mr. Webster. Because Mr. Webster himself was battling cancer, the trial court also permitted Mr. Webster's deposition to be introduced into evidence. A few weeks after the trial, Great American filed a motion to amend its pleadings to conform to the evidence at trial by adding an affirmative defense of fraud. On October 30, 2002, the trial court granted the motion over Nashville Ford Tractor's objection.[17]

On November 27, 2002, the trial court entered an order and separate findings of fact. The trial court found that Mr. Webster was the general contractor on two separate public projects, that Murrell Construction was a subcontractor for Mr. Webster on both projects, and that Ted Murrell was a subcontractor for Murrell Construction on both projects. The trial court found that Great American issued payment bonds for both projects and received a proper notice of claim under the payment bond for the Lock Four Road project but received no notice of claim on the Gallatin Industrial Center project. Therefore, the trial court concluded that Murrell Construction, Ted Murrell, and Great American were liable to Nashville Ford Tractor for portions of the unpaid leases.

---

[16]The trial court also allowed Nashville Ford Tractor to amend its pleadings to add claims against Mr. Webster and Great American under a common law bond theory for both the Lock Four Road and the Gallatin Industrial Center projects.

[17]From the record on appeal, it appears that Great American's motion to amend the pleadings to conform to the evidence presented at trial and the trial court's resulting order were unnecessary. Great American had already asserted the affirmative defense of fraud in its answer to Nashville Ford Tractor's amended cross-complaint.

However, the trial court also concluded that the evidence did not support liability on the part of Mr. Webster or Jimmy Murrell.

The trial court found that the balances due on the leases for the Hitachi excavator, the Samsung excavator, and the Fiat-Allis wheel loader were $29,232, $25,355, and $13,044, respectively. However, the trial court concluded that the evidence was insufficient to prove what proportion of the time the Hitachi excavator had been at the Lock Four Road site. The trial court specifically found that "Nashville Ford Tractor, Inc.'s agents or employees were shown to have intentionally altered and falsified business invoices" i.e., the lease agreements. Based on these findings, the trial court (1) dismissed all claims against Mr. Webster and Jimmy Murrell, (2) granted Nashville Ford Tractor a judgment against Great American and Ted Murrell for $38,399 for the Samsung excavator and the Fiat-Allis wheel loader, and (3) granted a judgment in favor of Nashville Ford Tractor against Murrell Construction alone for $29,232 for the Hitachi excavator. The trial court denied Nashville Ford Tractor's request for prejudgment interest based on its finding that Nashville Ford Tractor had "intentionally falsified documents in an attempt to collect [its] claim."

On February 24, 2003, the trial court entered an order denying Great American's and Nashville Ford Tractor's motions to alter or amend the judgment. Great American filed a timely notice of appeal. Nashville Ford Tractor filed a motion to dismiss the appeal for lack of a final order based on its conclusion that the trial court failed to rule on its common law bond claims against Mr. Webster and Great American. Following oral argument in this case, we entered an order denying Nashville Ford Tractor's motion to dismiss the appeal.

## II.
### THE STANDARD OF REVIEW

We turn first to the proper standard of review for the issues presented in this appeal. Because this is an appeal from a decision made by the trial court itself following a bench trial, the now familiar standard in Tenn. R. App. P. 13(d) governs our review. This rule contains different standards for reviewing a trial court's decisions regarding factual questions and legal questions.

With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). However, if the trial judge has not made a specific finding of fact on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Reviewing findings of fact under Tenn. R. App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. *Coles v. Wrecker*, 2 Tenn. Cas. (Shannon) 341, 342 (1877); *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979). There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. *Chapman v. McAdams*, 69 Tenn. 500, 506 (1878); 2 *McCormick on Evidence* § 339, at 439 (John W. Strong ed., 4th

Practitioner's ed. 1992) (stating that "the existence of a contested fact is more probable than its nonexistence"). Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 611, 130 S.W.2d 85, 88 (1939); *McBee v. Bowman*, 89 Tenn. 132, 140, 14 S.W. 481, 483 (1890); *Chapman v. McAdams*, 69 Tenn. at 503; *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000); *Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998); *McCormick v. Aabakus, Inc.*, 101 S.W.3d 60, 62 (Tenn. Sp. Workers Comp. Panel 2000).

Appellate courts review a trial court's finding of fact as a legal matter in one circumstance. When a finding of fact is based on undisputed evidence that can reasonably support only one conclusion, we will review that finding on appeal without Tenn. R. App. P. 13(d)'s presumption of correctness. *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d at 596; *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 431 (Tenn. Ct. App. 1994); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 936 (Tenn. Ct. App. 1992).

### III.
### THE ALTERATIONS ON NASHVILLE FORD TRACTOR'S LEASE RECORDS

Great American raises three challenges to the trial court's judgment in favor of Nashville Ford Tractor for the unpaid balance on the lease agreements for the Samsung excavator and the Fiat-Allis wheel loader. First, Great American argues that a surety cannot be liable under a bond if the principal is not also liable and, therefore, that the trial court erred by imposing liability on Great American after finding that Mr. Webster had no individual liability. Second, Great American argues that the evidence at trial was insufficient to show that the Samsung excavator and Fiat-Allis wheel loader were used exclusively on the Lock Four Road project. Third, Great American argues that the trial court's finding that Nashville Ford Tractor falsified documents in order to collect under the payment bond against Great American constitutes fraud barring any recovery by Nashville Ford Tractor.

In addition to disputing Great American's arguments, Nashville Ford Tractor takes issue with the trial court's judgment. It asserts that the trial court erred by (1) granting Great American's post-trial motion to amend its answer to allege fraud, (2) failing to hold that Mr. Webster was personally liable for the unpaid invoices, (3) failing to hold Great American liable for the unpaid balance on the Hitachi excavator, (4) refusing to grant it a judgment against both Mr. Webster and Great American on its common-law bond theory, and (5) denying its request for prejudgment interest based on the erroneous conclusion that it had intentionally falsified documents relating to its claim under Great American's payment bond.

We have determined that the dispositive issues in this case involve the evidentiary support for the trial court's conclusion that Nashville Ford Tractor intentionally falsified documents to collect under Great American's payment bond and the legal effect of this conclusion. According to Great American, the trial court's finding of fraud on the part of Nashville Ford Tractor precludes any recovery under the payment bond. Therefore, we must first determine whether the evidence supports the trial court's finding that Nashville Ford Tractor intentionally altered the lease agreements in an attempt to collect the unpaid balance under the Lock Four Road payment bond. If it does, then we must determine the legal effect of this fraud on Nashville Ford Tractor's claims against Great American.

After reviewing the evidence in minute detail, we have no difficulty concluding that the trial court correctly determined that Nashville Ford Tractor deliberately altered the lease agreements in a fraudulent attempt to collect the unpaid lease balances under the Lock Four Road payment bond. Although Nashville Ford Tractor initially denied altering these lease agreements, the evidence shows indisputably that someone at Nashville Ford Tractor added "Lock Four Road" or words to that effect to the originals of virtually all of the unpaid lease agreements submitted to Great American and Mr. Webster on May 19, 1997 as part of the claim under the Lock Four Road payment bond. It is also indisputable that at the time Nashville Ford Tractor submitted its claim under the Lock Four Road payment bond, it had actual knowledge that the equipment had not been used exclusively on that project for the entire period covered by the doctored lease agreements.[18] Nashville Ford Tractor's alteration of the lease agreements was designed to bolster its chance of success in its claim for payment of the unpaid leases under the Lock Four Road payment bond.

Nashville Ford Tractor's reliance on the altered lease agreements in making its claim cannot be dismissed as a mere inadvertent mistake. For whatever reason, when Nashville Ford Tractor made its claim against Great American and Mr. Webster for the balance due on the equipment leases, it decided to pursue the claim solely under the statutory payment bond for the Lock Four Road project. However, payment bonds are contract specific, and a payment bond guarantees payment for labor or materials only when they are used in connection with the contract covered by the payment bond. Adding the location of the project covered by the payment bond to a contract for labor or materials after the fact to make it appear that the parties contemplated that the labor or materials

---

[18]The Hitachi excavator was at the Gallatin Industrial Center site for weeks at a time, and Nashville Ford Tractor performed routine maintenance on the equipment while it was in the field. In addition, two months before Nashville Ford Tractor made its formal claim under the Lock Four Road payment bond, its collections manager had written a letter to the City stating that one piece of equipment had been recovered from the Gallatin Industrial Center job site and not from Lock Four Road.

-11-

would be used on the covered project from the outset would obviously and significantly strengthen the laborer or supplier's chance of recovering under the payment bond.

Even if we were to assume that Nashville Ford Tractor's May 19, 1997 submission of altered agreements to support its claim under the Lock Four Road payment bond was simply an innocent mistake, the same cannot be said of Nashville Ford Tractor's numerous later submissions and filings that relied on the same falsified documents. At the very latest, Nashville Ford Tractor knew on August 5, 1997 when Mr. Webster filed his complaint that it was being charged with having deliberately altered lease agreements in a fraudulent attempt to collect under the Lock Four Road payment bond. Each lease agreement was executed in quadruplicate, and three of the four copies of each agreement remained at Nashville Ford Tractor.[19] Thus, assuming Nashville Ford Tractor did not alter all three retained originals of each lease agreement, it would have been a simple matter for Nashville Ford Tractor to find the unaltered originals of the unpaid leases and rely solely on those documents in all later filings and correspondence in this case. Yet to this day, Nashville Ford Tractor has chosen to continue relying on the altered lease agreements rather than attempting to provide the unaltered versions to the courts and the other parties.

Finally, Nashville Ford Tractor has had numerous opportunities throughout the lengthy course of this litigation to provide an innocent explanation, if one exists, for its submission of altered lease agreements in support of its May 19, 1997 claim under the Lock Four Road payment bond. To date, Nashville Ford Tractor has not done so. At trial, Messrs. Chambliss and Denny, both officers and part owners of Nashville Ford Tractor, displayed remarkably little interest in discovering who in their company had been altering original lease agreements that were threatening to cost them tens of thousands of dollars in unpaid lease payments in a single case. Despite being asked about the alterations in his 1998 deposition, Mr. Denny still could not explain why the alterations had been made or who had made them when he testified during the September 2002 trial. When the trial court questioned him directly regarding whether he had made an effort to find out who wrote in "Lock Four Road" on the lease agreements, Mr. Denny responded as follows: "Probably – maybe not enough effort. I could – there's so much that goes on, it's hard. When you're involved in sales and taking care of all this, too, maybe I didn't make enough effort to find out."[20] The lack of interest on

---

[19]According to Mr. Denny, the three originals of each lease kept by Nashville Ford Tractor went to different places at the company after they were prepared: one to the front office for posting, one to the customer's rental file, and the third to the service manager. The fourth original was sent to the customer.

[20]When Mr. Denny was recalled to the stand the next day, the following exchange occurred:

Q. I am curious, Mr. Denny, after Judge Rogers asked you yesterday what investigations you had done to find out who altered these contracts and inserted Lock 4 Road [,] . . . when you got in last night, did you make any additional inquiry to find out who falsified these documents?

A. No.

Q. Do you intend on finding out who falsified these documents?

A. I believe the ones that were past – that had already been paid, that there wasn't anything

(continued...)

the part of owners and officers of the company in finding out who is making such mistakes strongly suggests that the alteration of the lease agreements was not a mistake at all.

Having concluded that the record on appeal fully supports the trial court's finding of fraud in the claims process, we must now determine whether the trial court properly limited the impact of this finding to the prejudgment interest issue. Although we have been unable to find Tennessee authority directly on point, it is clear that the trial court should not have allowed Nashville Ford Tractor to recover anything on the payment bond after finding that it intentionally falsified documents in an attempt to collect the unpaid balances on the equipment leases under the Lock Four Road payment bond. It has long been the policy of this state that fraud will vitiate any type of transaction. *New York Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 523, 292 S.W.2d 749, 754 (1956); *Stubblefield v. Patterson*, 4 Tenn. (3 Hawy.) 128, 129 (1816); *Anderson v. Mezvinsky*, No. E1998-00795-COA-R3-CV, 2001 WL 984908, at * 7 (Tenn. Ct. App. Aug. 28, 2001), *perm. app. denied* (Tenn. Dec. 27, 2001); *Fox v. Fox*, No. 85-275, 1993 WL 328789, at *5 (Tenn. Ct. App. Aug. 25, 1993), *perm. app. denied* (Tenn. Feb. 7, 1994).

The courts will not aid individuals in enforcing their legal rights where those rights arise from a transaction that is tainted by fraud. Thus, in the analogous context of mechanic's and material supplier's liens, both the Tennessee Supreme Court and this court have squarely held that falsifying accounts will preclude a party from enforcing a construction lien. *Hayes Pipe Supply, Inc. v. McKendree Manor, Inc.*, 695 S.W.2d 174, 178 (Tenn. 1985); *Alside Supply Ctr. v. Vinson*, 802 S.W.2d 632, 633, 634 (Tenn. Ct. App. 1990). We have concluded that the same rule should apply where, as here, a supplier of labor or materials submits altered documents in an attempt to collect on the payment bond for the project. C.C. Marvel, Annotation, *False Receipts or the Like as Estopping Materialmen or Laborers from Recovering on Public Work Bond*, 39 A.L.R.2D 1104, 1104-05 (1955); 17 AM. JUR. 2D *Contractors' Bonds* § 128, at 848 (1990).

The record on appeal fully supports the trial court's specific factual finding that Nashville Ford Tractor deliberately altered the unpaid lease agreements in its attempt to collect under the payment bond for the Lock Four Road project. Indeed, a contrary factual finding by the trial court would have been difficult to sustain under even the most deferential standards of review in light of the evidence contained in this record. Nashville Ford Tractor's fraud in the claims process bars it from recovering anything under the payment bond, and the trial court therefore erred in entering a judgment in favor of Nashville Ford Tractor against Great American. Our resolution of this issue obviates the need to address the other arguments raised by the parties.[21]

[20](...continued)
changed on them, I think.

Q.      Well, I don't think so, sir, but that is for the Court to find out.

[21]Murrell Construction and Ted Murrell have not challenged the judgments entered against them by the trial court, and Great American's objection to the trial court's dismissal of the claims against Jimmy Murrell is now moot.

**IV.**

The judgment of the trial court is affirmed in part and reversed in part and the case is remanded for any further proceedings consistent with this opinion that may be necessary. The costs of this appeal are taxed to Nashville Ford Tractor, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.