IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2010 Session

**RONNIE GALE GILL**
**v.**
**NANCY JANE GILL**

**Appeal from the Chancery Court for Obion County**
**No. 21,764     W. Michael Maloan, Chancellor**

___

**No. W2010-00921-COA-R3-CV - Filed March 24, 2011**

___

This is a post-divorce case. The husband sought to have his alimony in *futuro* obligation reduced or eliminated, asserting that his income had substantially decreased and the wife's income had increased. The trial court found a material change in circumstances, and reduced the husband's alimony *in futuro* obligation but did not eliminate it, finding that the wife still needed support. The husband appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

John M. Miles, Union City, Tennessee, for Petitioner/Appellant, Ronnie Gale Gill.

Damon E. Campbell, Conley Campbell Moss, Union City, Tennessee, for Respondent/Appellee, Nancy Jane Gill.

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

Petitioner/ Appellant Ronnie Gale Gill ("Husband") and Respondent/ Appellee Nancy Jane Gill ("Wife") married on August 2, 1971. They had three children. Husband became employed by Goodyear Tire & Rubber Company ("Goodyear") in approximately 1977. During the marriage, Wife was employed at Wal-Mart in an hourly wage position.

The parties were divorced in March 2000, when Husband was approximately forty-six years old and Wife was forty-five years old. At the time of the divorce, all of the parties' children were grown, and one of the adult daughters was living with Wife in the marital home. Husband was making approximately $60,000 per year, including substantial overtime, in his employment at Goodyear. Wife was making $5.90 per hour in her employment at Wal-Mart. In the divorce decree, Husband was awarded his Goodyear Employee Savings Plan, for which he would assume the repayment of an outstanding loan from that account. Wife was awarded the marital residence, the 1995 Dodge Caravan automobile, and the associated indebtedness on both. She was also awarded a one-half interest in Husband's Goodyear pension plan.[1] The trial court also awarded Wife alimony *in futuro* in the amount of $600 per month, finding that she was economically disadvantaged, had no realistic prospect for rehabilitation, and that Husband had the ability to pay support.

After the divorce, Wife remained in the marital home, and the parties' adult daughter continued to live with her. Wife continued her employment at Wal-Mart for about five years. After that, she underwent training in a medical administrative assistant program for two years. In June 2007, she became employed full-time at Northwest Tennessee Developmental District, earning $9.24 per hour, working a forty-hour week.

After the parties divorced, Husband remained employed at Goodyear, and continued to work considerable overtime. He married Brenda Gill ("Brenda"), who was employed full-time by an orthodontist. Husband moved into Brenda's home, which she owned prior to her marriage to Husband.

In October 2006, there was an employee strike at Goodyear; during the strike, Husband received no income. That same month, Husband filed a petition to reduce his alimony. In January 2007, a consent order was entered, suspending Husband's obligation to pay alimony, retroactive to the date of Husband's petition. Under the order, Husband was required to notify Wife when he returned to work. The strike ended that same month, January 2007.

In July 2008, Brenda reduced her work hours to only two days a week. At some point, she also began drawing Social Security benefits.

In January 2009, Husband made a decision to retire from Goodyear in July 2009. His decision was based on the stress of the work, anxiety about being fired, and his physical and mental condition. In anticipation of his retirement, on March 19, 2009, Husband filed a petition for termination of his alimony obligation. In the petition, Husband asserted that he

---

[1] A qualified domestic relations order was entered to enforce this obligation.

no longer had the same earning capacity that he had at the time of the parties' divorce. He also alleged that Wife's economic situation had improved.

In approximately May-June 2009, Husband received a "buyout" offer from Goodyear, that is, a lump sum payment in exchange for his agreement to retire early. Husband accepted the buyout offer. The buyout amount was $96,000 gross, with a net of $64,903.82.

Husband's alimony modification petition was heard in the trial court on November 30, 2009. At the time of the hearing, Husband and Wife were fifty-five and fifty-four years old, respectively. The trial court heard testimony from Husband, Wife, and Husband's new wife Brenda.

Brenda testified that she and Husband had expenses totaling $4136 per month. She said that her income from her part-time work and Social Security benefits totaled approximately $15,500 per year, or approximately $1350 per month. Husband was netting $1275 per month from his Goodyear pension. She said that they utilize savings each month to make up for the shortfall between their income and their expenses. Brenda testified that they have two certificates of deposit, one in the amount of $65,000 and the other in the amount of $21,000, and a savings account of approximately $17,000.[2] At the time of the hearing, Brenda had recently traded her Cadillac automobile for a 2008 Lexus ES 350. They paid the $25,000 price differential in cash. Brenda said she and Husband had no house payment or car payment.

Husband testified that, since the buyout, his only income was his pension check, a net income of $1275 per month. Husband said he cannot withdraw monies from his 401(k) until he reaches the age of fifty-nine and a half years old, and he cannot draw Social Security benefits until age sixty-two. Prior to the buyout, Husband's income from Goodyear was approximately $60,000 per year.

Husband testified at length about his various health problems. He was previously hospitalized for kidney stones twice, suffers from bursitis, and has experienced various foot and ankle problems. Husband also testified that he suffers from debilitating anxiety and depression. Husband had seen several physicians, and was taking numerous medications. Due to all of his ailments, both mental and physical, Husband testified that he did not seek employment after he retired, and that he did not intend to do so.

---

[2]Brenda testified that, prior to the marriage, she had one certificate of deposit of approximately $20,000.

Husband submitted into evidence deposition testimony from his physician. The physician corroborated Husband's testimony about his physical and mental impairments. In light of these conditions, the physician said, Husband would "do better" without a full-time job.

Finally, the trial court heard testimony from Wife. Wife said that her average net earnings were $1270 per month. Beginning in May 2009, she also began drawing a net of $396.38[3] per month from Husband's pension. Wife explained that the pension amount would continue for five years, and after that she would receive a reduced amount.[4] Wife continues to reside in the marital home, with a mortgage payment of $207.52 per month for approximately thirteen more years. She said that the house required extensive repair, which she financed in part through the proceeds of a small life insurance policy awarded to her on the death of her sister, and in part through a home equity loan. She continued to drive the 1995 Dodge Caravan awarded to her in the divorce, which was paid for but required expensive repairs. She also testified about her health problems and her health-related expenses. Wife testified that her total expenses averaged approximately $2500 per month.

Wife acknowledged that the parties' adult daughter continued to live with her. The daughter was employed and paid for her cell phone, the internet charge, and yard maintenance, but did not pay rent or otherwise contribute to the household expenses. Wife testified that the daughter did not increase her monthly expenses because the daughter was seldom at home. Wife's testimony concluded the evidence presented. The trial court then took the matter under advisement.

In March 2010, the trial court entered an order on Husband's petition to reduce or eliminate his alimony obligation.[5] The trial court found that Husband's retirement from Goodyear constituted a substantial and material change in circumstances, in that it significantly reduced his ability to pay alimony. The trial court also found an improvement in Wife's financial situation since the divorce due to her education, the full-time job she began in 2007, and her receipt of monthly payments from Husband's pension. However, the trial court also noted that the buyout from Goodyear netted Husband approximately $64,900 and that he and

---

[3]The record includes different figures as to the amount Wife nets from Husband's pension. The discrepancies in the figures in the record do not affect our analysis. For purposes of this Opinion, we rely on the figures provided by Wife during her testimony on November 30, 2009, $396.38 per month.

[4]Wife's testimony on this point was unclear, and she did not specify the amount she would receive after five years.

[5]For reasons that are not clear in the record, the March 2010 order also addressed Husband's earlier motion to modify his alimony because of the Goodyear strike, even though a consent order suspending Husband's alimony because of the strike was entered by Judge William Acree, by interchange, in January 2007.

Brenda "have over $100,000 in savings in addition to a 401(k) with funds of $50,000." Weighing all of these factors, the trial court found that Wife still had a need for alimony, but Husband had a diminished ability to pay. The trial court therefore modified Husband's alimony *in futuro* obligation from $600 per month to $300 per month.

Husband now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Husband argues that the trial court erred in declining to either eliminate or further reduce his alimony *in futuro* obligation.

On appeal, "[w]hen the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *4 (Tenn. Ct. App. Aug. 23, 2004) (citing TENN. R. APP. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *accord Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Nashville Ford Tractor*, 194 S.W.3d at 425.

Generally, the trial court's decision on whether to modify spousal support is not altered on appeal unless the trial court abused its discretion. *Wiser v. Wiser*, No. M2009-00620-COA-R3-CV, 2010 WL 2553652, at *7 (Tenn. Ct. App. June 25, 2010), *perm. app. den*. Feb. 16, 2011). This Court has described the abuse of discretion standard as follows:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

*Strong v. Baker*, No. M2007-00339-COA-R3-CV, 2008 WL 859086 at *4 (Tenn. Ct. App. Mar. 31, 2008), *perm. app. den*. Oct. 27, 2008).

## ANALYSIS

Husband argues strenuously that the trial court erred in refusing to eliminate or further reduce his alimony obligation. He contends that Wife is only entitled to support "on the scale

enjoyed at the time of divorce and the obligor is entitled to a reduction if his income declines so that his ability to provide is materially reduced." In support of this proposition, Husband cites ***Osborne v. Osborne***, 197 S.W.2d 234, 237 (1946). He argues that T.C.A. § 36-5-121(f)(2)(B)(2005)[6] should apply because the parties' adult daughter continues to live with Wife, and contends that Wife's testimony did not rebut the statutory presumption that the alimony recipient does not need the support. Husband points out that the daughter in question has an income of approximately $16,000 per year, and that Wife voluntarily chose not to require her to contribute towards Wife's expenses.

Husband notes that the trial court found a substantial and material change in circumstances in that his ability to pay alimony is significantly reduced. He points out that, since his retirement, his income has decreased from a net of $4856 per month to $1275 per month. Meanwhile, because Wife's employment earnings have increased and because she now receives $396.38 per month from her share of Husband's pension, Wife's gross income has increased from $12,272 per year at the time of the divorce to $25,092 per year.[7] Based on all of these factors, Husband seeks further modification or outright termination of his alimony obligation.

In response, Wife asserts that she rebutted the presumption contained in T.C.A. § 36-5-121(f)(2)(B), by her testimony that the adult daughter who lives with her neither contributes to the household expenses nor increases them. She also claims that Husband's retirement from Goodyear was voluntary, and notes that the approximately $65,000 that Husband netted from the buyout remains untouched in a certificate of deposit. Wife observes that Husband is not seeking other employment or applying for disability benefits, and she argues that

---

[6]T.C.A. § 36-5-121(f)(2)(B) states:

> In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
>
> (i) the third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the Court should suspend all or part of the alimony obligation of the former spouse; or
>
> (ii) the third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded, and the Court should suspend all or part of the alimony obligation of the former spouse.

T.C.A. § 36-5-121(f)(2)(B) (2005).

[7]We note that Husband's argument at times compares his *net* income with Wife's *gross* income.

Husband's loss of income is a result of his voluntary choices. She also notes that Husband has savings in excess of $100,000 and 401(k) benefits in excess of $50,000.

Wife acknowledges that her earnings have increased, but characterizes the increase as "modest." She argues that her hourly wage rate has increased annually over the past nine years at a rate of $0.37 per hour, from only $5.90 per hour at the time of the divorce, and says that "it was certainly foreseeable at the time of the divorce that both parties could expect to receive modest increases in income following the divorce."

To modify an alimony award, there must be a substantial and material change in circumstances. T.C.A. § 36-5-121(a) (2005); *Wiser*, 2010 WL 2553652, at *7; *accord* **Bogan**, 60 S.W.3d 727-28 (citing T.C.A. § 36-5-101(a)(1) (Supp. 2000)). "This change in circumstances must have occurred since the original award." **Brewer v. Brewer**, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993) (citing **Jones v. Jones**, 659 S.W.2d 23, 24 (Tenn. Ct. App. 1983)). A "substantial" change is one that "significantly affects either the obligor's ability to pay or the obligee's need for support." *Wiser*, 2l010 WL 2553652, at *7 (quoting **Bogan,** 60 S.W.3d at 728 (citing **Bowman v. Bowman** 836, S.W.2d 563, 568 (Tenn. Ct. App. 1991))). A change is material if it was not "anticipated or [within] the contemplation of the parties at the time" of the original divorce. **Bogan**, 60 S.W.3d at 728 (citing **Watters v. Watters**, 22 S.W.3d 817, 821( Tenn. Ct. App. 1999); **McCarty v. McCarty**, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); **Elliot v. Elliot**, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991)).

The party seeking modification bears the burden of proving that a substantial and material change in circumstances has occurred. *Wiser*, 2010 WL 2553652, at *8. Once a substantial and material change in circumstances has been established, the trial court is under no duty to modify the award; the party seeking modification must demonstrate that a modification is warranted. *Id*. In "assessing the appropriate amount of modification, if any, in the obligor's support payments, the trial court should consider the factors contained in" Tennessee Code Annotated § 36-5-121(i) [8] "to the extent that they may be relevant to the inquiry."[9] *Id.* (citing **Bogan,** 60 S.W.3d at 730).

---

[8]At the time of the *Bogan* decision, this statutory provision was contained at Tennessee Code Annotated § 36-5-101(d)(1). **See Bogan**, 60 S.W.3d at 730.

[9]Tennessee Code Annotated § 36-5-121(I) provides that the following factors are to be considered during a proceeding for modification of alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each

(continued...)

The trial judge determined that Husband's retirement from Goodyear significantly reduced his ability to pay alimony, and thus constituted a substantial and material change in circumstances. This finding was supported by the evidence in the record. Having found a substantial and material change in circumstances, the trial court then considered Husband's argument that a modification was warranted. We do the same.

We first address Husband's assertion that, because the parties' daughter resides with Wife, the trial court should have applied the statutory presumption under T.C.A. § 36-5-121(f)(2)(B) that the daughter is contributing to the support of Wife, or that the daughter is receiving support from Wife, such that Wife no long needs alimony. Under the statute, the presumption is rebuttable. The trial court did not expressly address this issue, but its failure to apply the presumption, under the facts of this case, amounts to an implicit finding that Wife effectively rebutted the presumption by her testimony that the daughter neither contributed to the household expenses nor increased them. This implicit finding was based on a credibility determination by the trial court, to which we accord great deference on appeal. ***See Cornelius v. State of Tenn. Dept. Of Children's Services***, 314 S.W.3d 906, 907

---

[9](...continued)

party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training, or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-121(I) (2005).

(Tenn. Ct. App. 2009). We find no error in the trial court's implicit finding that the statutory presumption was rebutted under the facts of this case.[10]

We consider next Wife's circumstances since the parties' divorce. The proof showed that, at the time of the divorce, Wife was earning $5.90 per hour working at Wal-Mart, and that by the time of the modification hearing below, she was earning $9.24 an hour. Over the roughly ten-year interval between the divorce and the modification hearing, this is not a startling increase in Wife's earning power and would have been within the contemplation of the parties at the time of the divorce. Wife's decision to draw from Husband's pension in approximately 2009 was likewise clearly contemplated at the time of the divorce, and does not constitute a substantial and material change in circumstances. *Wiser*, 2010 WL 2553652, at *7. Wife continued living in the marital home, continued paying the mortgage on the marital home, and was even still driving the same vehicle that was awarded to her in the divorce. Overall, any change that occurred with respect to Wife's circumstances, or her need, would not be a substantial and material change in circumstances.

Therefore, we focus on Husband's ability to pay alimony. The record indicates that Husband's decision to take the voluntary buyout from Goodyear and retire was a reasonable decision. Husband testified that his job at Goodyear was physically demanding, and his testimony about his physical and mental condition was undisputed. We note that the testimony of Husband's physician was supportive of his decision to retire from Goodyear, but that the physician stopped short of testifying that Husband, age fifty-five at the time of the hearing below, was unable to work in any type of gainful employment.

We also consider Husband's savings and investments. Husband and Brenda have two certificates of deposit, one approximately $65,000 and the other approximately $21,000, and a savings account with approximately $17,000 in funds. Additionally, Husband has a 401(k) retirement account with a balance of approximately $50,000. The proof showed that Wife, also looking toward retirement, has no such assets. Furthermore, Husband has no house or car payment, while Wife will have a mortgage payment for the next thirteen years and soon will need to replace the 1995 Dodge Caravan automobile.

The "modification of a spousal support award is 'factually driven and calls for a careful balancing of numerous factors.' " *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). From our review of the entire record, we find that the trial court carefully considered the parties' circumstances and the statutory factors, and its decision to reduce Husband's alimony

---

[10]We note also that the parties' daughter was living with Wife at the time of the parties' divorce, so this is not a change in circumstances.

obligation from $600 a month to $300 a month was well within the range of reasonableness. We decline to find that the trial court abused its discretion, and thus affirm its decision.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal shall be taxed to the Appellant, Ronnie Gale Gill, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE