IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 14, 2010

## LONNIE H. WILLIAMS, ET AL. v. ESTATE OF JAMES P. HOLLINGSWORTH, III, ET AL.

**Appeal from the Chancery Court for Blount County**
**No. 01-196     Telford E. Forgety, Jr., Chancellor**

**No. E2009-01410-COA-R3-CV - FILED JULY 26, 2010**

The original complaint in this case was filed by Lonnie H. Williams and his wife, Patricia A. Williams ("the Williams") against a neighboring landowner, James P. Hollingsworth, III, following damage to their property allegedly caused by excavation, logging, and road construction conducted on Hollingsworth's properties. The Williams sought injunctive relief (1) to prohibit Hollingsworth from further diverting surface water and debris onto their land, and (2) to require restoration of their property. They also sought related damages. Subsequently, Laurel Valley Investments, Inc., a Florida corporation, was added as a party defendant after the Williams determined that the corporation owned part of the property on which the erosion-causing activities occurred. The Williams alleged the joint and several liability of Hollingsworth and Laurel Valley. Years into the case, the parties entered into an agreed settlement that purported to settle their dispute. Later, the Williams filed a petition for contempt that sought enforcement of the settlement order. At a bench trial, the court permitted the Williams to take a non-suit as to the estate of Mr. Hollingsworth.[1] The trial court found Laurel Valley in violation of the court's orders and awarded the Williams damages of $194,915.60. Laurel Valley appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Brian J. Hunt, Clinton, Tennessee, for the appellant, Laurel Valley Investments, Inc.

---

[1]The record reflects that, after Mr. Hollingsworth died in November 2005, his estate was substituted as a party defendant. The estate is not a party in this appeal.

Chris Ralls, Maryville, Tennessee, for the appellees, Lonnie H. Williams and wife, Patricia A. Williams.

**OPINION**

I.

At the outset, we note that the record before us does not include a transcript or statement of the evidence. The procedural history below and underlying facts are as reflected in the technical record.

The parties' properties are located in an area of Blount County known as Rich Mountain Estates. The Williams own Tracts 4 and 8, Hollingsworth owned Tracts 6 and 7, and Laurel Valley owns a tract generally located above both the Williams' and Hollingsworth's properties and between Tracts 6-11 of Rich Mountain Estates and the boundary of the Great Smoky Mountains National Park. In their October 2001 complaint, the Williams claimed that activities on defendants' lands resulted in siltation and excessive water run-off that had eroded their land and adversely affected their rental cabin business. Defendants denied liability for any damage to the Williams' property or business. In addition, Hollingsworth filed a counterclaim alleging that the Williams had encroached upon his property by building a driveway, a sewer drain field and a berm on his property.

At a July 7, 2004 hearing, the parties announced that they had settled their dispute; the trial court incorporated their agreement into an order of settlement entered on October 5, 2004. Generally, the agreement provided that within one year of the July 7 hearing, encroachments by either party – by the Williams on Hollingsworth's Tract 7 and by defendants on the Williams' Tract 8 – would be eliminated. Further, within the same period of time, defendants would repair and/or improve the water drainage and siltation control measures around a roadway constructed across their properties consistent with the "control techniques" testified to by Eugene Baksa, a consulting engineer and expert witness retained by the Williams. The parties agreed that upon completion of the remedial measures, they would divide the costs of draining, removing silt, and resealing the banks of a pond located on Tract 4 of the Williams' property.

On November 14, 2005, the Williams returned to court in an effort to hold defendants in contempt and to enforce the terms of the "settlement" order; the Williams essentially contended that they had satisfied their obligations, but defendants had not. More specifically, the Williams asserted that defendants had accomplished none of the remediation measures recommended during Mr. Baksa's testimony and, in fact, had never proposed any specific remediation measures of their own. Following an October 11, 2006 hearing, the court

concluded, as relevant to this appeal, that a more detailed plan for resolving the parties' dispute was needed. In finding that defendants were *not* in contempt, the court stated:

> That the Agreed Order sought to be enforced by the said Petition [for contempt] . . . though not stated specifically, contemplates a written set of engineering plans to define with particularity the scope of work to be accomplished. Such plans were never developed.
>
> That without such engineering plans, the Agreed Order is unenforceable as written.

As relevant to this appeal, the court clarified the parties' obligations under the settlement agreement by first ordering defendants, within 60 days, to obtain "written engineering plans by a licensed civil engineer for the repair and/or improvement of the water drainage and siltation control measures used on the road across their property in accordance with the control techniques testified to by Eugene Baksa, expert witness for [the Williams] at the July 7, 2004 hearing." Next, defendants were ordered to "present said written engineering plans to Eugene Baksa for review and approval" at their cost. Finally, the court granted defendants until July 26, 2007, to implement the approved plans, to be followed by completion of the repairs to the Williams' pond as set out in the agreed order, "no later than December 26, 2007."

On December 10, 2008, the parties appeared at a hearing to review the defendants' progress in complying with the October 11, 2006 order that clarified the terms of the agreed settlement order. In its resulting order of January 15, 2009, the court found that there was partial compliance with its order; to wit: (1) defendants had retained an engineering company, Vision Engineering, to provide an engineering plan to address the problems created by the activities conducted on defendants' properties and their construction of a roadway to access both of their properties; (2) Mr. Baksa had provided a written review of the plans; and (3) defendants had eliminated the encroachment on the Williams' Tract 8. With respect to the remainder of the October 11 order, the court found as follows:

> Defendants have had adequate time to implement the engineering plans of Vision Engineering as modified by Mr. Baksa's comments and their failure to do so is a violation of the order of this Court.
>
> That before the Court [the Williams] have presented the estimate of W. M. Vaughn, Inc., . . . and based on Mr. Vaughn's

estimate, along with the Court recognizing certain financial obligations of [the Williams] to pay for part of the remediation of the problem with their pond, finds that Mr. Vaughn's estimate in the amount of One Hundred Ninety-Four Thousand Nine Hundred Fifteen Dollars Sixty Cents ($194,915.60) has been properly presented to the Court.

The Court further finds that justice and fairness under the circumstances of this case mandates that the Defendants should have an opportunity to have their own contractor review and either approve, modify, or submit their own estimate for the implementation of the Vision Engineering plan.

It is, therefore, accordingly ORDERED that all matters brought before the Court on December 10, 2008, are established for all purposes and that the Defendants may, if they choose and pursue, present a separate analysis of the cost of implementing the Vision Engineering plan only, it being the Court's intention to enter a money judgment based either on Mr. Vaughn's estimate, on the estimate to be presented by the Defendant[s], or upon such basis as the Court finds is reasonable and that it has been properly presented.

It is further ORDERED that this matter is set for final hearing on the issue of damages only for February 10, 2009, and that the Defendants shall supply [the Williams'] counsel with any estimate they intend to introduce at the hearing of this cause no later than February 1, 2009.

The final hearing did not take place as scheduled. On February 11, 2009, the court granted the motion of then-counsel for Laurel Valley, Irma G. Freestate and Jason Beddingfield, to withdraw effective immediately. In addition to Ms. Freestate's hospitalization, counsel asserted, in support of their motion, that Laurel Valley had "consistently failed to comply with or follow the direction of legal counsel." On March 6, 2009, the court ordered the case reset and directed that "counsel for all parties are ordered to attend [the] docket sounding." Further, the court expressly directed that "Laurel Valley . . . shall have until March 9, 2009 to retain counsel and have counsel appear as of record at the docket sounding for purposes of setting this case."

-4-

The final hearing was held on May 5, 2009 and the resulting final order and judgment, from which Laurel Valley now appeals, was entered on June 9, 2009. At the outset, the court noted that Laurel Valley had appeared without counsel. At the conclusion of the hearing, the court found that Laurel Valley had failed to comply with its previous orders by failing to submit their own estimate of the cost of implementing the Vision Engineering plans and by "filing pleadings without the assistance of counsel." The court declined to permit counsel for co-defendant Hollingsworth's estate to present evidence on behalf of Laurel Valley. The court granted judgment in favor of the Williams and awarded them $194,915.60 in damages based on the cost of the previously admitted proposal of W.M. Vaughn, Inc., minus a portion of certain repair costs that had been assigned to the Williams under the 2004 settlement agreement.

Laurel Valley, through counsel, filed a timely notice of appeal.

II.

Laurel Valley presents two issues for our consideration:

> 1. Did the trial court err by refusing to allow counsel for the Estate of Hollingsworth to represent Laurel Valley at the final hearing and present evidence on its behalf?

> 2. Was the evidence sufficient to justify an award of $194,915.60 in damages in favor of the Williams?

III.

In this non-jury case, we presume that the trial court's findings of fact are correct unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005). This presumption does not attach to the trial court's conclusions of law. *Johnson v. Johnson,* 37 S.W.3d 892, 894 (Tenn. 2001); *Hill v. Tennessee Rural Health Improvement Ass'n*, 882 S.W.2d 801, 802 (Tenn. Ct. App. 1994). Since there are no transcripts or statements of the evidence, we are limited in our review of Laurel Valley's issues to errors of law appearing on the face of the trial court's orders.

IV.

First, Laurel Valley asserts that the "chancery court is a court of equity and the failure of the . . . court to allow [Laurel Valley] to have counsel at the [final] hearing was an abuse

of its discretion." Laurel Valley submits that it had evidence to show that it was in compliance with the court's previous orders and insists that Hollingsworth's counsel, Mr. Ailor, should have been allowed to represent Laurel Valley and present the evidence to the court. The Williams respond that Laurel Valley has not shown it was prejudiced "by anything other than its own neglect" in failing to meet court-ordered deadlines and to hire counsel as directed.

In its final order and judgment, the trial court explained its rulings stemming from Laurel Valley's failure to hire counsel and otherwise comply with its orders. The court stated:

> The Court in exercising its power to control its docket notes that this case has lingered on its docket over several years and through a number of hearings. The Court rules that [Laurel Valley] has failed to comply with this Court's orders throughout the duration of these proceedings and with most particular reference to the Order of this Court dated January 15, 2009. [Laurel Valley] has specifically failed to comply with paragraph six of that Order [which] reads as follows:
>
> > The Court further finds that justice and fairness . . . mandates that [Laurel Valley] should have an opportunity to have their own contractor review and either approve, modify, or submit their own estimate for the implementation of the Vision Engineering plan.
>
> [Laurel Valley] has failed to take advantage of the leniency shown by the Court in that Order.
>
> Attorney William Ailor, counsel for the [Estate of Hollingsworth] requested that he be allowed to represent [Laurel Valley] and to present evidence on its behalf which the court denied based on the prejudice to [the Williams] in this case caused by [Laurel Valley] filing pleadings without the assistance of counsel which has lulled [the Williams] and their counsel into believing [that] [Laurel Valley] would not be represented and could not present proper evidence without counsel, and that attempting to hire counsel after the hearing had commenced

-6-

> would unduly prejudice [the Williams] who have come into this
> Court with clean hands.
>
> The Court finds that [the Williams] properly relied on the status
> of the record on this case, and that [Laurel Valley] has failed to
> put itself in a posture to present evidence in proper form.

In support of its position that the trial court's ruling was an abuse of discretion, Laurel Valley has attached to its appellate brief its answers to interrogatories and the request for production of documents propounded by the Williams in preparation for the final hearing. Generally speaking, the discovery responses include various subcontractors' rates and proposals for work to be performed consistent with the approved engineering plan, and details of "work completed" and "work to be completed." The documents are signed by Mr. Sandy Segall, Laurel Valley's corporate representative, and reflect that they were sent to the Williams' counsel and the trial court clerk's office on April 28 and 29, 2009, five or six days before the final hearing. Although Laurel Valley acknowledges that these discovery documents are not otherwise before us, it attributes this omission to the trial court: "These filings were not included by the trial court in the record on appeal . . . ." As the Williams correctly note, however, Tenn. R. App. P. 24(a) expressly excludes from the matters properly includable in the record on appeal "all papers relating to discovery . . . ." While Rule 24 further provides a procedure whereby a party may designate that matter specifically excluded by Rule 24, be included in the record, it does not appear that Laurel Valley utilized this procedure in this case. In short, the filings on which Laurel Valley seeks to rely to demonstrate error by the trial court – in refusing to permit co-defendant's counsel to present such evidence on its behalf, in establishing its compliance with the court's orders, and in determining the appropriate amount of damages – are not properly before this court. The absence of these matters is not due to any failure on the part of the trial court or its clerk; rather it is due to the failure of Laurel Valley to take the necessary steps to ensure that a proper record was prepared for our use.

More significantly, perhaps, it appears that the trial court disallowed the "evidence" at issue – the discovery responses – in part because they were signed and submitted by Laurel Valley's corporate representative. To bolster its contention that the trial court should have allowed Mr. Ailor to represent it, Laurel Valley argues that representation by counsel was "essential in order for [Laurel Valley] to present its case and demonstrate its compliance with prior Court orders." At the same time, however, it acknowledges that its "corporate representative Sandy Segall was not licensed to practice law in the state of Tennessee and therefore could not present evidence on [its] behalf." Laurel Valley correctly states the law. In this state, "a corporation is an artificial entity, separate from the corporation's officers and shareholders. Consequently, Tennessee statutes which permit a party to a lawsuit to represent

-7-

himself in the lawsuit are not applicable to corporations. . . ." ***Humphreys v. Breakstone***, No. W1999-02502-COA-R3-CV, 2001 WL 99570 at * 8 (Tenn. Ct. App. W.S., filed Jan. 30. 2001)(citing ***Old Hickory Eng. & Mach. Co. v. Henry***, 937 S.W.2d 782, 785 (Tenn. 1996)). For this reason, pleadings, motions and "other papers" submitted on behalf of a corporation require the signature of counsel. In the present case, the discovery responses signed only by Laurel Valley's corporate representative are essentially deemed unsigned. ***Id***. at *9; *see also* Tenn. R. Civ. P. 11. Presumably, its inability to prepare and present its case without an attorney is precisely the reason that the trial court directed Laurel Valley to hire counsel well in advance of the final hearing. In any event, we are unpersuaded that the trial court's refusal to allow Mr. Ailor to present the discovery documents was inequitable given the corporation's insistence on proceeding to the final hearing unrepresented despite the trial court's express order directing it to hire counsel nearly two months earlier.

Again, absent a hearing transcript or statement of the evidence, we rely on the trial court's findings of fact. Moreover, in the absence of a transcript or statement of the evidence "there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." ***Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). Nothing in the limited record before us preponderates against the trial court's factual conclusion that Laurel Valley "failed to put itself in a posture to present evidence in a proper form." Further, we find no error of law in the trial court's ruling that essentially declined to allow Laurel Valley to proceed in violation of its previous order directing the corporation to hire counsel prior to the final hearing. We further note that Mr. Ailor never made a written or oral appearance as hired or retained counsel for Laurel Valley and he never filed any papers purporting to be the corporation's counsel. Nothing in the record before us shows an abuse of discretion by the trial court.

V.

Next, Laurel Valley challenges the award of damages as excessive. In a continuation of its previous argument, Laurel Valley asserts that it was prevented from presenting evidence that it hired contractors who reviewed the engineering plans and actually performed the required work for a total of $4,452.08, a fraction of the damages awarded.

The settlement agreement allocated to defendants the cost of "repair and/or improve[d] . . . water drainage and control measures" under an approved engineering plan. As discussed, we have already concluded that the trial did not abuse its discretion in rejecting Laurel Valley's attempt to have Mr. Ailor speak for it, during the course of the final hearing, to present its discovery responses as proof of the costs of implementing the plan. As a result, the only evidence properly before the trial court on the question of damages – in this case, the cost of implementing the Vision Engineering plan – was the estimate of Vaughn, Inc.,

provided by the Williams at an earlier hearing. The trial court used the Vaughn estimate as the basis for the damages awarded to the Williams. There is nothing on the face of the trial court's orders demonstrating that the trial court awarded excessive damages.

Lastly, Laurel Valley asserts that the court erred in failing to divide the cost of repairing the Williams' pond as provided in the parties' settlement agreement. It concludes that under the terms of the agreement, "each party would be responsible for 50% of the costs for repair to [the Williams'] pond." It asserts that the trial court erred in failing to make each of the parties responsible for $12,500. The Williams respond simply that because Laurel Valley breached the terms of the agreement and related court orders, it is no longer binding. We think both parties misread the agreement and misapprehend the trial court's calculation of damages.

Regarding the division of the pond-related costs, the settlement agreement provides, in relevant part, as follows:

> After the plans and specified control measures therein as referred to in Paragraph 2 are completed, the parties will split the costs of repairs to the pond on [the Williams'] Lot 4 including draining, removing silt, and resealing pond banks with Bentonite as follows: Up to and including the cost of $10,000.00, 75% of the cost will be borne by the Defendants, 25% by [the Williams]; the cost above $10,000.00 will be split 50/50 by the parties.

The total cost of the proposal submitted by Vaughn, Inc., was $205,392.00[2]. Of this amount, $26,000 was attributed to the pond work. Applying the above-cited division of costs, of the first $10,000, 75% or $7,500 is assessed to Laurel Valley, while 25% or $2,500 is assessed to the Williams. Above the initial $10,000, a balance of $16,000 remains, and this cost is divided equally at a cost of $8,000 to Laurel Valley and $8,000 to the Williams. This results in a division of costs under the agreement of $15,500 to Laurel Valley and $10,500 to the Williams. When the Williams' costs are subtracted from the amount of the entire proposal, it can be seen that the trial court correctly calculated the amount of damages assessed against Laurel Valley: $205,392 less $10,500 = $194,892.

---

[2]To simplify the calculations, we have rounded the actual figure of $205,391.60 up to the nearest whole dollar.

Based upon the limited record, and based upon the exhibits[3] relied upon by the trial court, we find no error in the trial court's calculations.

VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Laurel Valley Investments, Inc. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

[3]These exhibits are in the record.