IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2019 Session

## SHEILA LONG PLESS v. ROBERT EUGENE PLESS, JR.

**Appeal from the Chancery Court for Williamson County**
**No. 45152          Joseph A. Woodruff, Judge**

_____

### No. M2018-02047-COA-R3-CV
_____

In this divorce, Wife appeals the trial court's decision to deny her alimony notwithstanding a previously executed separation agreement that provided a non-modifiable award of alimony *in futuro*. Wife also appeals the trial court's denial of a arrearage judgment for school and extracurricular expenses under the separation agreement. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Sheila Long Pless.

C. Diane Crosier and Marissa L. Walters, Franklin, Tennessee, for the appellee, Robert Eugene Pless, Jr.

## OPINION

### BACKGROUND

Robert Eugene Pless, Jr. ("Husband") and Shelia Long Pless ("Wife") were married in June 1987. Husband and Wife had three children together, all of whom reached adulthood before the present divorce matter commenced. During most of their marriage, Husband worked full-time while Wife home-schooled their three children and did not work outside the home.

Wife filed a Complaint for Legal Separation against Husband on January 14, 2009 in Williamson County Chancery Court ("the trial court"). Wife sought the legal

separation on grounds of irreconcilable differences, inappropriate marital conduct, and adultery. On February 20, 2009, Husband and Wife filed a Final Order of Separation that incorporated a parenting plan and a previously agreed-to Separation Agreement ("the Separation Agreement" or "the Agreement") signed on January 9, 2009. The Chancery Court entered the agreed order on March 10, 2009 and granted the legal separation to Wife on the sole ground of irreconcilable differences. The Separation Agreement was incorporated into the Final Order of Separation. Wife was represented by counsel in the separation, while Husband represented himself.

The terms of the Separation Agreement outlined the future financial obligations for both spouses. The Separation Agreement required Husband "to pay $2,000.00 per month to Wife for alimony *in futuro*. Said alimony shall not be modifiable and shall terminate only upon the death of Wife. The alimony shall be considered taxable income to Wife and shall be tax deductible to Husband." Further, the Agreement stated that "[t]he parties expressly understand and agree that this Agreement is intended to be a complete and final settlement of all property rights and support rights and obligations of the respective parties hereto and shall constitute a discharge from all claims arising out of their marital relationship except as provided herein." The Separation Agreement did not mention a future divorce or discuss the viability of the Separation Agreement if either spouse sought a divorce.

Additionally, the terms of the parenting plan incorporated into the separation order required Husband to pay $984.00 monthly to Wife as child support. Further, Husband agreed to "pay home school expenses, including, but not limited to, books, classes, internet and computer expenses, as well as extra-curricular expenses such as band, flute, piano, theatre, swimming." Husband also agreed "to pay all typical and ordinary college expenses, to include at a minimum tuition, room and board, and supplies, for the children based on then current tuition rates for an in-state public school in the state that the child resides at the time." Husband also agreed to maintain health insurance for the Wife and their children and maintain a life insurance policy with Wife as the primary beneficiary. Any uncovered health costs for the children would be split *pro rata* between the spouses, with 83% paid by Husband and 17% by Wife.

On April 26, 2016, seven years after the order of legal separation, Husband filed a Complaint for Divorce, again in Williamson County. In the divorce complaint, Husband sought a divorce on grounds of irreconcilable differences and a separation of more than two years. The Separation Agreement was not mentioned in the divorce complaint. On May 31, 2016, Husband also filed a petition for modification or termination of alimony in the legal separation case, which remained separate from the divorce case. Due to Wife's employment and Husband's financial circumstances, Husband alleged a substantial and material change in circumstances that would allow the court to limit or terminate Husband's alimony obligations.

Wife responded to the divorce complaint and petition to modify or terminate alimony with separate filings. In her answer to the divorce complaint filed on June 15, 2016, Wife argued that a final disposition of property occurred through the legal separation and requested a divorce on a ground of two years of separation "as no reconciliation has occurred." She further requested that Husband be responsible for all attorney fees and court costs related to the matter.

On July 7, 2016, Wife filed a motion for summary judgment in response to Husband's petition to modify or terminate alimony. Wife argued that Husband's petition should be dismissed and that she was entitled to judgment as a matter of law, as the final order for the legal separation "specifically and unequivocally states that the alimony ordered to be paid by Husband to Wife is not modifiable." Husband filed a response opposing summary judgment in September 2016, arguing that the alimony was modifiable as alimony *in futuro* and that he did not seek the advice of counsel when signing the Separation Agreement. On April 17, 2017, the trial court denied Wife's motion for summary judgment, stating that the legal separation order did not contain findings regarding "the total property owned by the parties, the parties' incomes, or whether the Court intended the *Final Order of Separation* to be a final division of the property."

While the motion for summary judgment was pending, Wife filed a counter-petition to assess Husband's outstanding obligations in the divorce action on March 1, 2017. Wife argued that Husband owed Wife and their children a combined $107,461.62 under the terms of the Separation Agreement for unpaid homeschool, college, and medical expenses. Wife demanded that Husband pay $1,500 a month, called for specific performance to pay for the remaining child's college education, and sought a judgment entered against Husband for the college costs of each child. In the termination of alimony action, Wife later amended her counter-petition to request that the trial court grant her a divorce on the single ground of separation and incorporate the Separation Agreement and remaining elements of the parenting plan into a final divorce decree. In a response to the counter-petition, Husband sought credit for his payments "over and above the child support obligation" and argued that Wife's allegations of outstanding obligations were not itemized and outside the scope of the Separation Agreement.

When the trial court issued its memorandum and order regarding Wife's motion for summary judgment, it advised the parties to "strongly consider" merging the separation and divorce cases into a single matter. An agreed order to consolidate the matters was entered on July 30, 2018. A trial on the combined matter was held on August 31, 2018.

At trial before a different trial judge than the one that heard the separation proceeding, Husband and Wife testified over the disputed issues of alimony and arrearages. The spouses stipulated that Wife should be granted a divorce based on the

parties' separation and that the terms of the Separation Agreement regarding property division should be incorporated into the divorce decree, with the exception of limited tangible personal property that Husband believed was separate property. Two claims in Wife's counter-petition regarding college costs were also voluntarily dismissed without prejudice before testimony began. At trial, Wife did not object to Husband entering the basement of the marital home to search for and retrieve specific items of tangible personal property that belonged to him. The trial court therefore ordered that Husband be allowed to enter the basement to search for the listed tangible personal property.

Concerning alimony, Husband testified that his monthly payments to Wife continued to have an overwhelming effect on his living and financial circumstances. After the legal separation was entered, Husband testified that he moved away from the marital residence. Husband stated that he lived in his minivan for five months before moving between small bedrooms and apartments for several years. He continued to work during the separation and placed his income into the marital bank account. In 2011, Husband moved to Memphis for a higher-paying job and rented small apartments in the city. For a limited period of time, he rented an apartment where he and his son could live together after his son graduated college. Husband next moved to Fayetteville, Arkansas in 2015, where he worked as Director of Facilities at the Walton Arts Center when the present case was heard. While he earned approximately $77,000.00 annually as Director of Facilities, Husband worked a second job to help meet his support obligations under the Separation Agreement. Husband also earns $966.00 each year for his work at an annual music festival in Memphis. Husband continued to live in a one-bedroom apartment in Fayetteville, Arkansas and worked to limit his living expenses to continue to make alimony payments. Since the separation was granted, Husband paid Wife $1,000.00 every two weeks for alimony and $500.00 every two weeks for child support when child support was owed. Additionally, Husband continued to pay child support through 2017, years after each of the family's children reached the age of majority. The $1,000.00 per month in child support, split over biweekly payments, was $16.00 more than Husband was required to pay each month and led to several "extra" payments. Husband supplied additional funds to Wife, including $200.00 each month to pay for an outstanding tax obligation. Husband also paid for 100% of the children's healthcare costs, above and beyond the *pro rata* requirements outlined in the Separation Agreement. During the period of separation, Husband paid Wife a total of $71,200.00 above his alimony and child support obligations to Wife. The money was provided to Wife with occasional instructions for its use, including paying for college, medical bills, or previous investments or tax obligations.

Husband stated that, despite his salary, he has lived in spare bedrooms and small apartments for years after the separation so he could consistently pay alimony and child support. Evidence was produced concerning Husband's income and payments regarding alimony, child support, and other family contributions that were required and not required under the Separation Agreement. While Husband stated that he voluntarily signed the

Agreement without fraud or duress, he said both spouses "anticipated a reconciliation" when they entered into the Separation Agreement and later attended counseling periodically.

After the separation took effect, Wife testified that she remained at home to homeschool the family's remaining children. As the youngest child finished high school and enrolled in college, Wife re-entered the workforce and took a job with The Home Depot. When the divorce trial occurred, Wife made less than $13.00 an hour as head cashier. She also possesses more than $400,000.00 she received through a wrongful death claim that has largely remained in savings. Wife stated that she is averse to financial risk after she lost around $18,000.00 from an investment that Husband encouraged her to make. Wife owned the marital home in Brentwood ("the marital home"), though she obtained full title to the home before the legal separation through a quitclaim deed signed by Husband.

Wife testified that she believed the Separation Agreement granted her permanent alimony from Husband "indefinitely[.]" Wife considered the Separation Agreement "an agreement between me and my husband and he agreed to it and it's also was necessary for me to live. Most of my living expenses are used from that." Wife's testimony revealed several discrepancies between her financial obligations as described in evidence and with her testimony itself. Wife further testified at length about how she believed Husband had lied and withheld money from her while she was trying to keep their family afloat. Wife testified that she perceived the approximately $71,000.00 in voluntary payments was "just to help out with living expenses" and should not be credited against any financial obligations under the Settlement Agreement. Wife also discussed her regular expenses, but her testimony did not correlate with the expenses listed in her trial exhibits. The trial court found that Wife's testimony concerning her expenses was not reliable.

After testimony and the filing of post-trial briefs, the trial court granted the Wife a divorce based on the legal separation of more than two years. However, the trial court analyzed alimony under the state's statutory framework without considering the terms of the Separation Agreement. Based on the parties' current financial situations and the statutory factors concerning alimony, the trial court did not grant spousal support to either party. Wife's claims for money judgments against Husband were also dismissed. Rather, the trial court found that Husband's payments exceeded the funds Wife claimed were owed for medical and extracurricular homeschool expenses. Wife timely appealed the judgment to this Court.

**ISSUES PRESENTED**

Wife presented the following issues on appeal, which this Court slightly restates as follows:

- 5 -

1.     Whether the trial court erred in failing to enforce the alimony provision of the Separation Agreement as a contract between the parties.

2.     Whether the trial court erred in failing to incorporate the Separation Agreement into the final divorce decree and failing to find that a material change in circumstances warranted a modification of the Husband's alimony obligation, or alternatively, whether the trial court abused its discretion by not granting alimony to Wife after a *de novo* review.

3.     Whether the evidence preponderates against the trial court's decision that the Husband's voluntary payments to Wife during the separation were intended or should be credited to satisfy the Husband's financial obligations specified in the Separation Agreement.

4.     Whether the trial court abused its discretion in not awarding attorney's fees to Wife.

5.     Whether Wife should be awarded attorney's fees incurred on appeal.

In the posture of Appellee, Husband also seeks an award of attorney's fees incurred in this appeal.

## DISCUSSION

### I.     Alimony

The central dispute in this case involves whether a Separation Agreement containing a long-term, non-modifiable alimony obligation should be enforced upon the parties' subsequent divorce. Wife contends that the Separation Agreement is an unambiguous contract that should be enforced notwithstanding the change in status from legal separation to absolute divorce. Husband counters that Tennessee's divorce statutes and interpreting caselaw mandate a hearing to determine entitlement to alimony even where a contract had been made. Because no such hearing occurred in the separation proceeding, Husband contends that the trial court was well within its discretion under both Tennessee caselaw and the separation statute to reconsider the alimony award at the time of the divorce. Thus, the dispute in this case involves the intersection of contract law and the legal separation statute.

To the extent that the obligations contained therein retain their contractual nature, separation agreements, like marital dissolution agreements, are enforced like contracts. *Lee v. Lee*, No. M2014-01911-COA-R3-CV, 2017 WL 1205913, at *4 (Tenn. Ct. App. Mar. 31, 2017). Issues that retain their contractual nature include "agreement[s] between a husband and wife on matters outside the scope of the legal duty of child support during minority, or alimony *in futuro* over which the court also has continuing statutory power to modify[.]" *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). Issues of contract interpretation are reviewed de novo with no presumption of correctness. *Barnes*

- 6 -

*v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (involving a marital dissolution agreement). The goal of our review is therefore "to ascertain and to give effect to the parties' intentions." *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) (citing *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000)). We therefore begin our review with the language of the agreement, considering each provision in light of the agreement as a whole, giving the language its natural and ordinary language. *Id.* We construe the agreement fairly and reasonably as written without rewriting the contract. *Id.* (citing *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561–62 (Tenn. Ct. App. 2003)).

Divorce, however, is not a creature solely of contract between spouses. Rather, this Court has explained that "[a] divorce action is really a triangular proceeding where in addition to the parties the State through the court is a quasi party." *Anderson v. Anderson*, 810 S.W.2d 153, 155 (Tenn. Ct. App. 1991) (quoting *Osborne v. Osborne*, 197 S.W.2d 234, 236 (Tenn. Ct. App. 1946)). "In its role as a 'quasi party' to divorce proceedings, the court must examine each marital dissolution agreement and make an independent determination that it is equitable and legally sufficient" pursuant to the mandates of the applicable divorce statutes. *Gibbs v. Gibbs*, No. E2015-01362-COA-R3-CV, 2016 WL 4697433, at *4 (Tenn. Ct. App. Sept. 7, 2016) (citing Tenn. Code Ann. § 36-4-103(b) ("No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement . . . .")). Thus, even where the parties have entered into a contract concerning alimony, "such agreements are merely evidential in value and may be followed by the court in its award of alimony—they should be given great consideration but are subject to close scrutiny by the court." *Osborne*, 197 S.W.2d at 236.

As such, we must also consider the statutes applicable to both legal separations and divorces. Like contract interpretation, statutory construction presents a question of law, which this Court reviews de novo with no presumption of correctness. *In re Estate of Starkey*, 556 S.W.3d 811, 815 (Tenn. Ct. App. 2018) (citing *Davis ex rel. Davis v. Ibach*, 465 S.W.3d 570, 573 (Tenn. 2015)). As the Tennessee Supreme Court previously explained,

> Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. "'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'" When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. The statute must be construed in its entirety, and it should be

assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning.

*Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (citations omitted).

We therefore begin, as we must, with the language of the relevant statute, Tennessee Code Annotated section 36-4-102, which provides the following procedure applicable to requests for legal separation:

A party who alleges grounds for divorce from the bonds of matrimony may, as an alternative to filing a complaint for divorce, file a complaint for legal separation. Such complaint shall set forth the grounds for legal separation in substantially the language of § 36-4-101 and pray only for legal separation or for such other and further relief to which complainant may think to be entitled. The other party may deny the existence of grounds for divorce but, unless the other party specifically objects to the granting of an order of legal separation, the court shall declare the parties to be legally separated.

Tenn. Code Ann. § 36-4-102(a). Upon the entry of a decree of legal separation, the court "may provide for matters such as child custody, visitation, support and property issues during legal separation upon motion by either party or by agreement of the parties." *Id.* § 36-4-102(c). Thus, the parties to a legal separation are expressly authorized by the statute to enter into an agreement providing for issues of support "during legal separation[.]" *Id.* After the parties have been legally separated for a period of two or more years, one party may seek a an absolute divorce; in that event, the statute mandates that the "[t]he court granting the divorce shall make a final and complete adjudication of the support and property rights of the parties." *Id.* § 36-4-102(b).

According to the Tennessee Supreme Court, separation agreements are generally "not regarded as a final decree in the sense said decree upon petition of the party to whom it was awarded and proper showing may be changed, amended or modified as justice and equity may require." *Abney v. Abney*, 433 S.W.2d 847, 849 (Tenn. 1968) (citations omitted). Instead, a legal separation is considered a "temporary statutory remedy" afforded to parties as an alternative to divorce. *Longanacre v. Longanacre*, No. M2012-00161-COA-R3-CV, 2013 WL 183715, at *6 (Tenn. Ct. App. Jan. 16, 2013) (Clement, J. concurring). Thus, when the trial court grants a divorce following a legal separation, the Tennessee Supreme Court has held that the trial court is "empowered by

the [the statute allowing a divorce following two years of legal separation] to adjust the support and property rights of the parties." ***Abney***, 433 S.W.2d at 849.

In this case, however, Wife asserts that the Separation Agreement should constitute a permanent obligation in accordance with its express terms. Specifically, Wife notes that the Separation Agreement expressly provided that it was intended to "be a complete and final settlement of all property rights and support rights and obligations of the respective parties hereto[.]" Moreover, Wife points out that the alimony term contained therein was expressly non-modifiable; as such, she contends that it did not merge into the court decree and remained solely governed by contract law. *Cf.* ***Vick v. Hicks***, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014) (holding that parties were free to agree by contract that an otherwise modifiable alimony obligation was non-modifiable). Based on the plain language of the contract, Wife argues that the trial court was not authorized to relieve Husband of his alimony obligation.

Husband counters that while the Separation Agreement does constitute a contract, its only purpose was to provide for the parties during the separation, as allowed by section 36-4-102(c). In support, Husband notes that the Separation Agreement contains no provision stating that its terms will be conclusive upon any future divorce. Instead, Husband contends that the trial court was required by section 36-4-102(b) to make a fresh "final and complete adjudication" as to issues of support upon the filing of the divorce.

A dispute concerning whether a separation agreement should be conclusive upon divorce, though uncommon, has been previously addressed by this Court on a few occasions. Indeed, both parties recognize that this Court's decision in ***Joiner v. Joiner***, No. M1999-01721-COA-R3-CV, 2001 WL 329529 (Tenn. Ct. App. Mar. 28, 2001), represents the seminal, though unreported, case on this issue. In ***Joiner***, both spouses sought a legal separation and asked the trial court to incorporate a previously drafted separation agreement into the court's order of legal separation. ***Joiner***, 2001 WL 329529, at *1. At the time, both spouses sought the legal separation as a temporary measure that would insure that the wife could remain on the husband's health insurance until she became eligible for Medicare. *Id.* After the wife became eligible for her own health insurance, the separation agreement stated that a divorce would follow the legal separation. *Id.* The agreement further provided for alimony to the wife, until her death or remarriage, or the husband's death. The trial court conducted a hearing on the agreement and entered an order of legal separation incorporating the parties' separation agreement.

Following the wife's eligibility for her own insurance and the purported conversion of the separation to an absolute divorce, she filed a motion to set aside the "final judgment" of divorce. The trial court denied the motion and an appeal followed. This Court held that the trial court could not enter an absolute divorce following a decree of separation without a petition for such relief being filed. *Id.* at *2 (citing ***Joiner v. Joiner***, No. 01A01-9710-CH-00593, 1998 WL 426887, at *2 (Tenn. Ct. App. July 29,

1998) (hereinafter, "*Joiner I*")). As such, we vacated the trial court's order granting an absolute divorce and remanded for further proceedings. *Id.* (citing *Joiner I*, 1998 WL 426887, at *2).

After remand from this Court, the husband filed a complaint for absolute divorce, noting that all matters had been previously resolved. *Id.* at *3. The wife filed a counter-complaint for divorce but submitted that the separation agreement was not binding in the divorce pursuant to section 36-4-102(b). As such, the wife argued that the trial court was required to hold an evidentiary hearing to make a fresh determination of alimony upon divorce. Eventually, the trial court ruled that while a hearing is "often necessary" to convert a legal separation to an absolute divorce, a hearing was not required in this case because "the agreement between the parties was intended to be final and had been approved by the court." *Id.* at *3.

The wife appealed to this Court, which affirmed the decision of the trial court. In reaching this result, the court first rejected Wife's argument that section 36-4-102's requirement that the court "granting the absolute divorce shall make a final and complete adjudication of the support and property rights of the parties" mandates an evidentiary hearing in all instances. Rather, the court held that only an "adjudication" is required by the statute, which may be based on arguments, briefs, and review of prior proceedings, particularly where no new evidence is alleged. *Id.* at *4 (noting that the wife "did not allege any new facts which would require new evidence"). The court provided further guidance as to when no evidentiary hearing may be necessary:

> Although in most cases an evidentiary hearing will be required at the time an absolute divorce is awarded, that is not always true. In many cases, an order granting a [legal separation] is not intended to make final disposition of the parties' property. In those situations, the parties seek a legal separation without knowledge that a reconciliation will not be successful. Then, property distribution and support awards at the beginning of a legal separation are not intended to be a final adjudication of such issues if a reconciliation does not occur. . . .[A] hearing is usually necessary for a re-examination of the temporary award of property and support made upon the grant of divorce from bed and board.

*Id.* Because the parties initially sought an absolute divorce and agreed to such divorce mere months before the divorce was supposed to be effective, the court held that the separation agreement's provisions were "intended to be final." *Id.* Moreover, the court noted that the trial court had previously held "a complete evidentiary hearing regarding both Wife's capacity at the time of the agreement and the fairness of the agreement itself." *Id.* The Court therefore concluded that the trial court "made a 'final and complete adjudication of the support and property rights of the parties.'" *Id.* (quoting Tenn. Code Ann. § 36-4-102).

In support of this conclusion, the ***Joiner*** panel distinguished a previous case that had come to an opposite conclusion, ***Meriwether v. Meriwether***, (no Court of Appeals number assigned) (Tenn. Ct. App. Dec. 28, 1979). In ***Meriwether***, the husband and wife were legally separated by court decree. ***Joiner***, 2001 WL 329529, at *5 (citing ***Meriwether***, at *1). More than two years later, Husband filed a complaint for absolute divorce. ***Id.*** (citing ***Meriwether***, at *2). The trial court, with a different judge presiding, eventually approved the complaint for absolute divorce, ruling that the previously entered decree of separation awarding alimony would be conclusive in the divorce. ***Id.*** (citing ***Meriwether***, at *2-*3).

The wife appealed, raising a similar argument to the wife in ***Joiner*** that the trial court was required to hear proof regarding the support obligation in order to grant the absolute divorce. ***Id.*** (citing ***Meriwether***, at *3–*4). Unlike in ***Joiner***, however, we reversed the decision of the trial court, noting that "the successor judge had no access to the information presented to the predecessor except through the recitations of the bed and board decree." ***Id.*** (citing ***Meriwether***, at *4). In reaching this result, we noted that the record did not show that the judge in the legal separation hearing had complete information concerning the parties' property and income or that the trial judge had intended its final decree to be a final division of property upon divorce. ***Id.*** (citing ***Meriwether***, at *4). Finally, we "observed that, because a [legal separation] is generally considered a temporary arrangement to provide for the needs of the parties and to encourage reconciliation, upon conversion from a [legal separation] to an absolute divorce, a court should re-examine the support and property rights of the parties in light of the impending permanent dissolution." ***Id.*** (citing ***Meriwether***, at *6).

The ***Joiner*** court recognized that its result was inconsistent from the result reached in ***Meriwether***, but noted that such inconsistencies were borne of the disparate situations presented in each case. ***Id.*** First, the court found important the fact that the same trial judge had presided over both the legal separation and the divorce. Thus, unlike in ***Meriwether***, the trial judge was "quite familiar with the parties' holdings and income, having already visited the agreement twice, first at the original hearing and again on Wife's motion to set aside." ***Id.*** Second, the ***Joiner*** court noted that the separation agreement in that case was clearly made in anticipation of divorce with no hope of reconciliation. As such, the court held that ***Meriwether*** was not a bar to the trial court's decision to enforce the Separation Agreement at the time of the absolute divorce. ***Id.*** at *6.

In our view, the ***Joiner*** court relied on two inter-related factors in order to determine whether a separation agreement would be conclusive as to issues of property and alimony upon a future action for absolute divorce: (1) whether the agreement was intended to be a final adjudication of the parties rights upon divorce; and (2) whether a full hearing was conducted on the fairness of the hearing in light of the parties' property and income, and if so, whether the same trial judge that entered the separation order presides over the divorce.

- 11 -

Turning to the circumstances at issue in this case, we note that one issue is sharply disputed: whether the parties intended the settlement agreement to be a final adjudication of alimony upon divorce. Wife relies largely on the express terms of the Separation Agreement, which explicitly states that it constitutes a final adjudication of the parties' respective rights "arising out of their marital relationship[.]" Moreover, Wife points to her own testimony of her understanding of the Separation Agreement, which she believed was to continue ""indefinitely[.]" According to Husband, however, the parties did not intend for the Separation Agreement to be conclusive upon divorce. In support, he cites his testimony regarding his intent when the contract was executed, as he testified that at that time he contemplated reconciliation, rather than divorce. Husband also points to the nine-year delay between the separation order and the divorce and the conspicuous failure to include any mention of divorce in the Separation Agreement.

The issue of the full and final adjudication is also in dispute in this case. Husband, however, notes that no evidentiary hearing was ever conducted relative to entry of the Separation Agreement. Wife does not appear to dispute that no evidentiary hearing occurred; instead, Wife points to the language of the trial court's order granting the legal separation, which contains a specific finding that "the parties have made adequate and sufficient provision by written agreement for the equitable settlement of any property rights between the parties" as well as "the support and maintenance of their minor children." We note, however, that while the trial court made affirmative findings as to the equity of the issues of property settlement and child support, no such express finding is included with regard to alimony.[1] Moreover, there can be no dispute that the trial judge presiding over the legal separation was not the same trial judge that presided over the divorce.

Considering the totality of the circumstances, we must conclude that the ***Joiner*** opinion supports the trial court's decision to consider Wife's alimony request anew upon the filing of the complaint for absolute divorce. In a case following the ***Joiner*** opinion, we held that it is generally "premature to address the type of support to which [a spouse] may be entitled" upon divorce in an action solely for legal separation." ***Hooberry v. Hooberry***, No. M2011-01482-COA-R3-CV, 2012 WL 2356127, at *4 (Tenn. Ct. App.

---

[1] The trial court's findings in the order of legal separation appear to be an effort to comply with the mandates of Tennessee Code Annotated section 36-4-103 (b), which provides that

> No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties.

Although the trial court's ruling certainly complies with this mandate to the extent that it is applicable, it is not dispositive of the question of whether the trial court presiding over the divorce was required to enforce the Separation Agreement nearly ten years later upon divorce when there is no dispute that the separation order was not preceded by an evidentiary hearing.

June 20, 2012). In another case, we explained that "where possible and practical, it is better practice to defer permanent disposition of property and alimony until a permanent disposition is made of the marital status of the parties." **Hutton v. Hutton**, 584 S.W.2d 670, 672 (Tenn. Ct. App. 1979). Thus, we do not presume that an obligation created at the time of separation was intended to be conclusive upon divorce without specific evidence that compels such a conclusion.

Here, the language of the Separation Agreement expressly states that it is a final adjudication of the parties rights arising from their marriage, but unlike the agreement in **Joiner**, the contract is somewhat ambiguous whether a divorce was actually contemplated at the time the contract was executed. Likewise, nothing in the order of separation entered by the trial court indicates that the trial court contemplated a divorce at the time it approved the Separation Agreement. The record also reflects that the trial court in the separation proceeding did not hold an evidentiary hearing to determine the fairness of any alimony award and did not make an express finding that the alimony award was analyzed and considered "adequate and sufficient" under the circumstances. Finally, the trial judge who was asked to enter the order of absolute divorce did not preside over the separation proceeding and therefore had no familiarity with the parties or their respective financial situations. As such, the factors that led the **Joiner** court to enforce the Separation Agreement upon a later action for absolute divorce are simply not present in this case.

Generally, we enforce contracts between the parties and will not relieve a party from their poor judgment in entering into a bad agreement. *See* **White v. Motley**, 63 Tenn. 544, 549 (Tenn. 1874) ("Courts . . . are not constituted to relieve parties of a bad bargain, or to alter or modify their contracts, to conform to changed conditions and circumstances."). In divorces, however, the court performs a special role to ensure that agreements are "equitable and legally sufficient" pursuant to the mandates of the applicable divorce statutes. **Gibbs**, 2016 WL 4697433, at *4. As such, agreements entered by the parties are not binding on the divorce court, but only evidential in value. *See* **Osborne**, 197 S.W.2d at 236.[2] Thus, had this been a simple divorce in which the parties presented the trial court with a martial dissolution agreement, the trial court would have been required to reconsider the obligations thereunder before granting an absolute divorce.

The fact that a legal separation had been granted nearly ten years prior, without any evidentiary hearing concerning the parties' finances, without any order indicating the previous trial judge's intent to apply the Separation Agreement to a future divorce, and without any express finding that the alimony award was appropriate simply does not deprive the trial court of its ability to make such a determination. Indeed, the separation

___

[2] Importantly, this case involves whether to reconsider issues of alimony upon divorce as required by the legal separation statute. Post-divorce actions to enforce marital dissolution agreements that were incorporated into final decrees of divorce are therefore inapposite to the case-at-bar. *See, e.g.,* **Myrick v. Myrick**, No. M2013-01513-COA-R3-CV, 2014 WL 2841080, at *1 (Tenn. Ct. App. June 19, 2014) (involving a post-divorce request to terminate alimony).

- 13 -

statute mandates that the divorce court "make a final and complete adjudication of the support and property rights of the parties." We have previously held that this statute often requires an evidentiary hearing unless the circumstances indicate otherwise. *See Joiner*, 2001 WL 329529, at *5. Under the particular circumstances of this case, we cannot conclude that the trial court erred in performing its duty under the relevant statute by making its own determination as to whether Wife was entitled to an award of alimony under the applicable statutes given the present circumstances. The trial court's decision not to enforce the alimony provision contained in the Separation Agreement is therefore affirmed. All remaining issues related to the enforcement of the Separation Agreement and whether a material change in circumstances warranted a modification of the agreement are therefore pretermitted. *See In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855 at *8 (Tenn. Ct. App. June 30, 2017) (noting that when appellate courts are presented with multiple issues on appeal and find one to be dispositive, the remaining issues have consistently been found as pretermitted).

We next address Wife's contention that the trial court erred in failing to award her alimony *in futuro* under Tennessee Code Annotated section 36-5-121. The statute provides that, in an action for divorce, a court may award alimony "to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a). Four types of alimony are recognized in Tennessee: (1) alimony in future, (2) alimony in solido; (3) rehabilitative alimony, and (4) transitional alimony. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011) (citing Tenn. Code Ann. § 36-5-121(d)(1)). In this case, Wife confines her request to alimony *in futuro*. This type of alimony "is intended to provide support on a long-term basis when there is relative economic disadvantage and rehabilitation is not feasible. *Id.* (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony *in futuro*, however, cannot "guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse," as "[i]n many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage." *Id.*

In determining whether to award alimony and, if so, the nature, amount, and duration of such an award, courts must consider the following factors:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;

- 14 -

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). Careful adherence to the statutory framework when considering a request for alimony "fulfills not only the statutory directives but also alimony's fundamental purpose of eliminating spousal dependency when possible." *Gonsewski*, 350 S.W.3d at 110.

Decisions concerning alimony are "factually driven and involve[] the careful balancing of many factors." *Id.* at 105 (footnote omitted). As such, "'[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision.'" *Id.* (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn.Ct.App.1998)). We therefore apply the abuse of discretion standard to our review of the trial court's decision. *Id.* (citing *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002)). As the Tennessee Supreme Court has explained,

An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination,

the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id.* (citations omitted).

In the present case, the trial court analyzed the statutory factors and determined long-term alimony was inappropriate. As the trial court noted in its order, Wife "is able to work, is well educated, has experience in the working world, has substantial separate assets from which to earn investment income," and has gratuitously supported her three adult children when they stay at her home for extended periods. Upon review of the trial court's decision, we must conclude that Wife failed to show an abuse of discretion in the trial court's decision.

After a 32-year marriage, Husband and Wife are less than two years apart in age, have bachelor's degrees, and were in relatively stable health at the time of the divorce trial. *See* Tenn. Code Ann. § 36-5-121(i)(2)-(5). Both are employed, though Husband has a larger annual income than Wife and a larger pension and social security retirement benefit. *See* Tenn. Code Ann. § 36-5-121(i)(1). While Husband has greater earning potential than Wife in the near future, Wife has substantial financial resources that have not been utilized since the legal separation. *Id.* Each of the children has reached adulthood, so there is no impediment for either spouse to work outside the home. *See* Tenn. Code Ann. § 36-5-121(i)(6). Wife also owns the marital home after Husband signed a quitclaim deed before the legal separation, while Husband has lived in small apartments and spare rooms since the separation. *See* Tenn. Code Ann. § 36-5-121(i)(7), (9). While neither party likely maintained the marital standard of living upon separation, Husband's alimony obligations required him to more dramatically decrease his standard of living when compared to Wife. *Id.* The marital property was largely divided at the time of the legal separation, with the limited exception of tangible personal property that Husband believed was still at the marital home. *See* Tenn. Code Ann. § 36-5-121(i)(8). During the marriage, Husband worked outside the home, while Wife largely home-schooled their children as both parties had agreed. *See* Tenn. Code Ann. § 36-5-121(i)(10). The divorce was granted based on the nearly 10 years of separation at the time of the divorce trial and did not include specific fault of the parties. *See* Tenn. Code Ann. § 36-5-121(i)(11). While transitional alimony may have been warranted when the separation began, this Court sees no need to continue alimony when Wife is working and has greater access to funds than Husband. *See* Tenn. Code Ann. § 36-5-121(i)(12). While Husband has a greater annual income than Wife, Wife is not dependent on Husband for income and may still be better suited than Husband to maintain the standard of living that both had during the marriage. At the very least, reasonable people could disagree whether alimony of any sort is warranted, given that both parties have access to income or assets that the other one does not. Therefore, the trial court did not abuse its discretion in failing to award alimony to Wife.

## I.    Arrearage

In a separate claim, Wife questioned whether the trial court erred in holding that Husband's payments to Wife in excess of alimony and child support satisfied Husband's financial obligations under the parenting plan. In particular, Wife argues on appeal that Husband failed to pay $53,456.00 in home schooling and extracurricular activities. Although Wife admits that Husband made additional payments of $71,200.00 beyond his alimony and child support obligations, Wife argues that these payments should not be considered as meeting his obligation to pay school expenses because Husband did not designate these payments as meant to compensate for those expenses.[3]

This issue involves the trial court's findings of fact, so this Court will review these issues de novo with a presumption of correctness, unless the preponderance of evidence indicates otherwise. Tenn. R. App. P. 13(d); *Church v. Church*, 346 S.W.3d 474, 481 (Tenn. Ct. App. 2010). Under this standard, great weight is given to the trial court's determinations of credibility. *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Importantly to this case, this Court also gives "great weight to a trial court's factual findings that rest on determinations of credibility." *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005) (citing *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997)); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000)). "Appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted).

The spouse attempting to recover a judgment for unpaid child support possesses the burden of proving that the amount is due. *Pirrie v. Pirrie*, 831 S.W.2d 296, 298−99 (Tenn. Ct. App. 1992). "A petition to recover unpaid child support 'is essentially a proceeding to collect a judgment. In such cases, the plaintiff has the burden of proving the judgment and its validity, but the defendant has the burden of proving affirmative defenses, including payment.'" *In re Estate of Miller*, No. E2012-00648-COA-R3-CV, 2013 WL 221579 at *4 (Tenn. Ct. App. Jan. 22, 2013) (quoting *Cagle v. Davis*, No. 89-40-II, 1989 WL 44921, at *5 (Tenn. Ct. App. May 5, 1989)).

The trial court made the following findings with regard to this claim:

> In the aggregate, Husband paid Wife $71,200.00 more than the total of his alimony and child support obligations. Wife does not dispute that she received this additional money, she merely asserts Husband should not receive any credit for these payments against any specific obligation. In short, Wife regards these extra payments as "found money" or as some sort of entitlement.

---

[3] Wife initially demanded $107,461.62 in payments from Husband, though that figure included alleged college obligations that Wife non-suited at the beginning of trial.

> Although neither party can definitively account for payments made against specific invoices, the aggregate amount of money Husband paid to Wife over and above his alimony and child support obligations exceeds the total amount Wife claims Husband owes for medical expenses, and extracurricular home school expenses.
>
> Wife has failed to carry her burden of proof, and will not be awarded a judgment against Husband for alleged arrearages on support obligations.

Wife raises the same argument on appeal, contending that Husband never intended for his extra payments of $71,200.00 to be directed to his child support obligations. Instead, she argues that Husband's payments were gratuitous efforts to compensate for prior tax obligations and investment losses and to assist in the continued care of her adult children. Wife contends that the facts related to this issue are undisputed to an extent that this Court should not presume the trial court's correctness and instead consider this issue as a question of law with no presumption of correctness. *See **Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.***, 892 S.W.2d 428, 431 (Tenn. Ct. App. 1994) ("Where, as here, the operative facts are not in dispute, the issue before us becomes a question of law for our determination."). Respectfully, we do not agree.

At trial, Husband testified that the additional funds he provided to Wife were usually not designated for a specific purpose. At times, he made general comments that the money was meant to cover college expenses, healthcare costs, or prior tax obligations or investment losses. Husband continued to make child support payments years after his children reached the age of majority and made 100 percent of healthcare payments for the family up to the time of the trial. Wife, however, argued that the payments were not specifically targeted toward Husband's child support obligations and were instead meant to help support the family and compensate for previous financial misdeeds. Wife never told Husband where his payments were going or that she believed that he was failing to meet his financial obligations under the parenting plan. In any case, Husband continued to pay child support after each of his children reached the age of majority, and Wife largely accepted the money, allegedly without allocating it towards his parenting plan obligations, even after the children were no longer homeschooled and pursuing extracurricular activities. From our review of the record, Wife saw this money as a way to broadly support their children as they went to college and occasionally resided at the marital home with her.

Based on the foregoing, it is clear that the parties presented divergent testimony as to the nature of these payments. We simply do not countenance Wife's argument that because each and every payment was not accompanied by an express statement that it represented payment under the parenting plan that it was not intended as, and could not constitute, such a payment. Because of the disputes of fact between the parties, this Court operates under a presumption that the trial court's findings are correct. *See **Walton***, 950 S.W.2d at 595; ***Nashville Ford Tractor, Inc.***, 194 S.W.3d at 424. This presumption is

especially true of those findings that rest on credibility, which will not be overturned absent clear and convincing evidence to the contrary. *See* **Wells**, 9 S.W.3d at 783.

The trial court specifically found that Wife was not credible as to her discussion of her finances. Although the trial court did not make a specific credibility finding against Wife as to her explanation of the extra payments made by Husband, as previously noted, the testimony on this issue was sharply disputed. In finding in favor of Husband, the trial court implicitly credited Husband's testimony over that of Wife. Credibility findings need not be express, but "may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case." **Richards v. Liberty Mut. Ins. Co.**, 70 S.W.3d 729, 733–34 (Tenn. 2002). Thus, the trial court's factual findings as to this issue clearly rest on the credibility of Husband as compared to Wife.

Given the trial court's credibility findings in favor Husband, Wife's claims that Husband should not receive credit for the additional funds that were provided to Wife are not compelling. Much of the $71,200.00 that Husband paid in excess of his support obligations resulted from Husband continuing to make child support payments after his children reached the age of majority. While neither party provided complete instructions about how the money should be used or clearly documented the extent or use of the funds, Wife's argument that the money should not be directed toward any outstanding child support obligations seems to ignore how the same child support payments were directed in the past. Neither this Court nor the trial court "is [] required to check common sense at the courthouse door." **Dattel Family Ltd. P'ship v. Wintz**, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007). In this case, the trial court compared the arguments of Husband and Wife and found Husband's to be more compelling. Further, the trial court had explicit doubts about Wife's credibility regarding her finances and implicit issues concerning her broader credibility concerning time and money. Considering the evidence as whole, we therefore cannot conclude that the evidence preponderates against the trial court's ruling on this issue.

## II.    Attorney's Fees

Wife contends, if she prevails in any part of the decision, that the trial court erred in not awarding her attorney's fees as outlined under the Separation Agreement. On the same basis, Wife contends that should she prevail in this appeal, she should be awarded her attorney's fees incurred in this Court. In support, Wife points to the Separation Agreement, which states, in a legal dispute to enforce the agreement, that "the successful party shall be entitled to a judgment for reasonable expenses, including attorney's fees, and court costs, incurred in prosecuting the action." "Our courts long have observed at the trial court level that parties are contractually *entitled* to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to these fees." **Eberbach**, 535 S.W.3d at 478 (citations omitted). As Wife did not prevail at the trial court or on appeal, she is not entitled to attorney's fees under the terms of the Separation Agreement either in the trial court on appeal. The trial

court therefore did not err in refusing to award Wife attorney's fees at trial. We likewise decline to do so on appeal.

Husband also seeks an award of attorney's fees incurred on appeal pursuant to Tennessee Code Annotated section 36-5-103(c). When the divorce was filed in 2016, that statute provided for the following:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2014). This section of the statute was later amended in 2018, and Husband cites the 2018 version of the law in support of his request for attorney's fees on appeal.[4] Regardless of which version of the statute is applicable in this case, an award of attorney's fees thereunder remains in this Court's discretion. *See* Tenn. Code Ann. § 36-5-103(c) (2014) (noting that fees may be allowed "in the discretion of such court"); Tenn. Code Ann. § 36-5-103(c) (2018) (noting that fees may be allowed "in the court's discretion"); *see also **Eberbach v. Eberbach***, 535 S.W.3d 467, 477 (Tenn. 2017) (holding that for a request under section 36-5-103(c), "the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate"). After a review of the circumstances at issue, we exercise our discretion to decline an award of attorney's fees. While Wife possesses considerable assets, Husband's ability to earn income outstrips Wife's ability. Moreover, it appears that Wife continues to at times support the parties' minor children, without objection from Husband. We are therefore not persuaded to grant an award of attorney's fees to Husband.

---

[4] The 2018 version of the statute provides that

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c) (2018); *see also* 2018 Tenn. Laws Pub. Ch. 905 (H.B. 2526), eff. July 1, 2018.

## CONCLUSION

The judgment of the Chancery Court of Williamson County is affirmed in all respects. This cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Shelia Long Pless, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE